STATE of Missouri, Respondent,

v.

Marcus ADKINS, Appellant.

Marcus ADKINS, Appellant,

v.

STATE of Missouri, Respondent.

No. 60144, 63171.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 14, 1993.

S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

Defendant was convicted by a jury of two counts of murder in the first degree in violation of § 565.020, RSMo 1986, and was sentenced to two consecutive terms of life imprisonment without possibility of probation or parole. Defendant appeals the trial court's judgment. Defendant also appeals the denial of his motion to vacate the judgment and sentence pursuant to Rule 29.15. We affirm.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence shows that defendant and Norma Jean Simmons were married in October, 1988 and separated in January, 1990. On January 28, 1990, defendant broke into Ms. Simmons' home, where she lived with her children, Norman and Terry, ages five and eight, respectively. Defendant, who was armed with a rifle, told Ms. Simmons that he wanted them to get back together. She refused, and defendant threatened to kill her and "get to the kids." Ms. Simmons later called the police. The next day, Ms. Simmons obtained an ex parte temporary restraining order barring defendant from her home.

In the early morning of February 9, 1990, at approximately 4 a.m., defendant again broke into Ms. Simmons' home. She and Darryl Morris were awakened by defendant, who asked Ms. Simmons what she was doing with a white guy. Also in the apartment were Ms. Simmons' two children and her nephew, Travis Gordon. Mr. Morris left the apartment, and later returned with the police. When the police arrived, Ms. Simmons left her apartment, and the police did not allow her to return to the apartment.

Defendant remained in the apartment with the three children. Defendant eventually allowed Travis Gordon to leave the apartment, but Norman and Terry remained behind. Travis confirmed that the two boys were still alive when he left the apartment. Defendant would not allow the police to see the children, but said that they were upstairs watching T.V. Defendant repeatedly asked for Ms. Simmons to come up to the apartment and refused to release the children.

A police sniper heard the first gunshot at approximately 7:05 a.m. Defendant then said "I told you I want my wife up here and I mean business." Another shot was heard shortly thereafter. Around 8:30 a.m., defendant was given a telephone. Defendant warned the police that he was not going to jail. Another gunshot was then heard, at which time the police entered the apartment, where they found defendant with a gunshot wound.

Norman's body was found in the bathroom and Terry's body was lying on a bed. Both had been shot in the head at point-blank range.

Defendant's first point on appeal is that the trial court erred in allowing evidence concerning defendant's previous threat of violence against Ms. Simmons and her children and in allowing the jury to view the ex parte restraining order against defendant. Defendant argues that this evidence did not bear any relevance to the crimes with which appellant was charged and that its admission deprived defendant of his rights to due process and a fair trial. We disagree.

Defendant filed a motion in limine to prevent the evidence of the prior threat from being introduced, but failed to object to its introduction during the trial. Therefore, defendant failed to preserve this issue for appellate review. *State v. Sinner*, 779 S.W.2d 690, 696 (Mo.App.1989). We will address this claim on its merits, but our review of it is limited to plain error. Rule 30.20. We will grant relief only if defendant demonstrates "manifest prejudice affecting his substantial rights." *State v. Parker*, 856 S.W.2d 331, 332–333 (Mo. banc 1993). *See* Rules 29.12(b) and 30.20. The defendant must show that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.*

The general rule is that evidence of prior bad acts or crimes of the defendant is not admissible in a criminal trial. *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992). However, there are exceptions to this rule. "Where such evidence is directly relevant to some disputed material fact, and thus serves a legitimate purpose rather than merely indicting the defendant as a 'bad person' with a propensity to commit this particular type of crime, the prior crimes rule is no bar." *State v. Shaw*, 847 S.W.2d 768, 778 (Mo. banc 1993). Evidence of other defendant misconduct is relevant to prove the crime charged when it tends to establish "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial." *Sladek*, 835 S.W.2d at 311.

Defendant's defense in this case is that he did not kill Norman and Jerry, but was framed by their mother, Norma Simmons. Defendant maintained that he was invited to the house and he arrived without a rifle. He further claimed that the murder weapon belonged to Norma Simmons. These material facts are in dispute because the state's case is that defendant came uninvited to the house with the murder weapon.

The evidence of defendant's previous threats against Norma and her children was relevant to show motive and the absence of mistake or accident. This evidence showed that defendant was motivated by his desire to reconcile with Ms. Simmons, and was attempting to do so through coercion. It also showed that defendant had previously threatened "to get to" the children if Norma did not get back together with him, and therefore his shooting the children was not mistaken or accidental. The ex parte restraining order also goes to establish the absence of mistake or accident. The order shows that defendant was aware that he was banned from the Simmons home and that he did not mistakenly believe himself to be invited to be there. Evidence of the first encounter is probative to show a common scheme. On both occasions, defendant entered Ms. Simmons' home with a weapon, unsuccessfully attempted to reconcile, and threatened Ms. Simmons and the children. All of this evidence is relevant to the disputed material facts of the case and the trial court did not plainly err. in admitting it. Point denied.

Defendant's second claim of error is that the admission of the photographs of the deceased children were repetitive, prejudicial, inflammatory and of no probative value. We disagree.

A trial court has broad discretion regarding the admission of photographic evidence. *State v. Weems*, 840 S.W.2d 222, 229 (Mo. banc 1992). Even though gruesome, photographs may be admitted to show the nature and location of wounds or to establish any other element of the state's case. *State v. Mease*, 842 S.W.2d 98, 108 (Mo. banc 1992). The trial court did not abuse its discretion in admitting the photographs. Point denied.

Defendant's third point is that the trial court erred in limiting his counsel during voir dire. We disagree.

Defendant's counsel attempted to question the venire panel concerning their preconceived notions about whether a mother could harm her own children. The prosecutor objected to this question as being irrelevant and the trial court sustained the objection. Defendant argues that this information was necessary to determine the prospective jurors' attitudes about this issue because his

defense was that Ms. Simmons killed her children and framed defendant.

■ The decision whether to permit the question was within the trial court's sound discretion. *State v. Allen*, 829 S.W.2d 524, 526 (Mo.App.1992). We will interfere with the trial court's decision only when the record shows manifest abuse of that discretion and a real probability of injury to the complaining party. *Id.* Defendant's theory of the case is that he was framed by Ms. Simmons, who murdered her own children. The evidence shows, however, that a police sniper and Travis Gordon saw both children alive while being held by defendant. Gunshots were heard from the apartment where defendant was holding the children. This entire time, Ms. Simmons was at another apartment which served as police headquarters. Defendant presented no evidence which could logically implicate Ms. Simmons in the murders. The voir dire question therefore had no relevance to the case. Defendant has not persuaded us that the trial court abused its discretion or, given the overwhelming evidence against him, that defendant suffered injury as a result of the ruling. Point denied.

Defendant's next point is that the trial court erred in denying his motions to vacate, set aside and correct judgment and sentence which were based on ineffective assistance of counsel. Defendant argues his trial counsel was ineffective because she (1) did not call witness Isaac Billings, (2) opened the door for the prosecution to introduce evidence of defendant's previous violent encounter with Ms. Simmons and her obtaining a temporary restraining order, and (3) failed to object to a photograph of the victims' bedroom.

■ Defendant contends that had trial counsel subpoenaed and presented Isaac Billings at trial, his testimony would have corroborated defendant's testimony that he had not previously kidnapped Norman Peete. "In order to show that counsel was ineffective in not having a witness testify, movant must show ... testimony of the witness would have presented a viable defense." *Tettamble v. State*, 818 S.W.2d 331, 332 (Mo. App.1991). Billings was not a witness to the crime, or even an alibi witness. At best,

Billings' testimony would shown that defendant had not previously kidnapped one of the victims. His testimony would not have presented a viable defense to the charge of murder. The motion court found the evidence presented at the hearing established that Billings had agreed to appear and had been cooperative and therefore, trial counsel could not have foreseen that Billings would refuse to appear voluntarily.

■ Defendant also claims that trial counsel opened the door to admission of evidence which she had previously sought to exclude. On direct examination, the state did not question Ms. Simmons about the prior kidnapping incident or the ex parte temporary restraining order. Trial counsel, on cross-examination, asked Ms. Simmons about the restraining order. The state, on redirect and over trial counsel's objections, questioned Ms. Simmons about the specifics of the restraining order. The restraining order was later introduced into evidence and submitted to the jury during their deliberations. The motion court found that trial counsel handled the information in a manner that was totally consistent with the strategy of the defense which was that the mother killed the children and tried to blame it on defendant. Trial counsel, by cross-examining Ms. Simmons about the ex parte restraining order, was emphasizing that Ms. Simmons had made statements about defendant without his being present and that her statements were the sole basis for the order. The motion court held that given the strategy to show that the mother was making up things about defendant, defendant was not prejudiced.

■ Defendant finally alleges that his counsel was ineffective for failing to object to a photograph which showed posters on the wall of the victim's bedroom. Failure to object to certain evidence is not generally ineffective assistance of counsel. *State v. Hudson*, 793 S.W.2d 872, 883 (Mo.App.1990). Failure to object does not rise to the level of ineffective assistance of counsel unless movant has suffered a substantial deprivation of the right to a fair trial. *Chambers v. State*, 781 S.W.2d 116, 118 (Mo.App.1989). The

motion court found that in the absence of argument in regard to the posters, defendant's allegation of prejudice was mere speculation.

Our review of a Rule 29.15 motion is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous. *Brummell v. State*, 770 S.W.2d 379, 380 (Mo.App. 1989); Rule 29.15(j). Such findings and conclusions are deemed clearly erroneous if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Id.* After reviewing the record, we are not left with such an impression. Point denied.

Defendant's fifth claim of error is based on the trial court's use of a jury instruction patterned after MAI–CR3d 302.04 which defines reasonable doubt. Defendant argues that the given definition of reasonable doubt allowed a finding of guilt based on a degree of proof below that required by the due process clause. This instruction has been examined by the Missouri Supreme Court and found constitutionally sound. *State v. Ervin*, 835 S.W.2d 905, 924 (Mo. banc 1992). Point denied.

Defendant's final claim of error is essentially that he had ineffective assistance of post-conviction counsel. Defendant claims that his motion counsel should have called witnesses to support his version of the facts. Defendant argues that these witnesses would have proven that defendant did not participate in any of the charged conduct.

Claims of ineffective assistance of post-conviction counsel are not cognizable under Rule 29.15 and are categorically unreviewable. *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992). Point denied.

The judgments of the trial court and motion court are affirmed.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.