STATE of Missouri, Respondent,

v.

Stephen HOLLOWAY, Appellant.

Stephen HOLLOWAY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 63699, 65046.

Missouri Court of Appeals,
Eastern District,
Division One.

June 14, 1994.

S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

This court has consolidated Defendant's appeal from his conviction for delivery of a controlled substance and his appeal from the subsequent denial of his Rule 29.15 motion for post-conviction relief. We affirm.

Only a brief description of the facts is necessary, because Defendant does not challenge the sufficiency of the evidence to convict him. On March 17, 1992, Detective Vincent Carr was working undercover for the St. Louis City Police Department in the narcotics division. He was a member of the Street Corner Apprehension Team (SCAT), which infiltrates narcotics operations in certain areas of the city. On the date in question, Carr was acting as an undercover buyer, searching for narcotics to buy. Carr was wearing a Kel transmitter, a wire which transmits his conversations to a police vehicle monitoring his situation. Carr approached Defendant on the southwest corner of St. Louis Avenue and Marcus and asked him if he knew where to buy crack cocaine. Defendant took Carr to a house on Labadie. Carr gave Defendant $30 of marked money to purchase the crack cocaine from a third party at the residence. Defendant then purchased the cocaine for Carr. Following these events, Defendant was arrested and charged with delivery of a controlled substance in violation of § 195.211 while acting with another person.

Defendant's trial was held on February 3–4, 1993. The jury convicted him and the court sentenced Defendant to twelve years' imprisonment. Defendant then filed a *pro se* Rule 29.15 motion challenging his conviction and sentence. This motion was subsequently amended by appointed counsel. The motion court denied Defendant's motion without an evidentiary hearing.

We address Defendant's points out of order. In his second point of review, Defendant contests the trial court's decision to compel him to give race-neutral reasons for his peremptory strikes of white venirepersons pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant advances four major arguments against the State's use of *Batson* in his case: (1) white venirepersons are not protected by the Equal Protection Clause or *Batson* and its progeny; (2) he was denied his right to a jury panel composed of a fair cross-section of

the community; (3) the State failed to make a *prima facie* case of discrimination; and (4) "the court engaged in berating defense counsel for *Batson* challenges which had no bearing on the instant case."

After Defendant exercised his peremptory challenges, the State pointed out he had used them to strike all whites. The State requested pursuant to *Batson* that Defendant state his race-neutral reasons for striking those whites, Venirepersons Drury, Condon, Knight, Matoushek, Reinarmann, and Santambrogio. In response, Defendant stated he was striking Drury and Reinarmann because they had connections with the police. The court held these reasons were sufficiently race-neutral. The court also found the strike of Reinarmann to be nondiscriminatory.

Regarding Venirepersons Condon and Knight, Defendant alleged his race-neutral reason for striking them was "they looked disinterested in the proceedings. They did not answer anything." In response, the trial court stated:

> It's your feeling under the law that if a juror or two appears to be disinterested in the proceedings, which there's some question in this Court's mind whether that fits Miss Condon or Miss Knight, who the Court was looking at frequently during both voir dires, and they seemed to be totally attentive, you feel that is sufficient reason or sufficient neutral reason to support your exercise of your peremptory strikes under the law?

Following further discussion regarding the other venirepersons, the following colloquy occurred:

> THE COURT: ... However, the Court is still troubled over Miss Carol Sue Condon and Susan H. Knight whether or not you have expressed a sufficient neutral reason for the exercise of your peremptory strikes in those two instances.
>
> \*     \*     \*     \*     \*     \*
>
> THE COURT: ... See, I have no responses for Janet Lee Efthim, juror 728. Nor do I have any responses for Susan M. Conrey. Nor do I have any responses for

Paula R. Brooks and several other people that were left on the panel.

> MS. VAN ARINK [STATE]: One in particular being Roy Wellington on page four who's underneath Reinarman as well as Monica Turner, who—
>
> MR. BASHIR [DEFENSE]: Page four, line two.
>
> MS. VAN ARINK: Page four, line six. I mean, those people weren't answering questions either, and they're black. Nor on page five, Lamar Clay, who's a black male.

The trial court held Defendant had failed to state sufficient race-neutral reasons for Venirepersons Condon and Knight and disallowed the strikes. Defendant failed to state any reason at all for his strike of Venireperson Santambrogio and that strike was also disallowed. All three served on the jury which ultimately convicted Defendant.

Defendant's first contention regards whether he should be required to state race-neutral reasons for the strikes of white venirepersons. In particular, Defendant alleges the Supreme Court's decision in *Batson* was an attempt to remedy the long-standing problem of exclusion of racial *minorities* from jury duty and should not be applicable to the exclusion of a racial *majority*, whites, from a venire panel composed primarily of white venirepersons. Defendant's contention is without merit.

In *State v. West*, 866 S.W.2d 150 (Mo.App. 1993), this court examined the exact issue before us now. In that case, West exercised all six of his peremptory challenges to strike white venirepersons. In response, the State requested West be required to aver his race-neutral reasons for the strikes. After West alleged his reasons, the court allowed all of the strikes but one. West then challenged on appeal the propriety of applying *Batson* to white venirepersons on a predominantly white venire panel. *Id.* at 152. This court held *Batson* applies to white venirepersons on a predominantly white venire panel because white venirepersons are also protected from discrimination by the Equal Protection Clause. *Id.* at 152[1].

This conclusion is buttressed by several decisions of the United States Supreme Court indicating the Equal Protection Clause does not tolerate racial bias in any form. In *Georgia v. McCollum*, 505 U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Supreme Court held a criminal defendant can be required to state race-neutral reasons for his or her peremptory strikes. In its comments the Court failed to distinguish between races when it stated, "the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party." *Id.* at ——, 112 S.Ct. at 2359[12].

In *Powers v. Ohio*, 499 U.S. 400, 416, 111 S.Ct. 1364, 1374, 113 L.Ed.2d 411 (1991), the Supreme Court held a white defendant may object to race-based exclusion of black venirepersons because "race prejudice stems from various causes and may manifest itself in different forms." In *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 629, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991), the Court extended *Batson* to peremptory strikes made in civil proceedings stating: "If our society is to continue to progress as a multiracial democracy, it must recognize that the automatic invocation of race stereotypes retards that progress and causes continued hurt and injury."

In addition, in *Regents of University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), the Supreme Court invalidated the university's special admissions policy for minorities while explicitly finding the Equal Protection Clause applicable to a white medical school applicant. The Court stated: "The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal." *Id.* at 290–91, 98 S.Ct. at 2748[9].

More recently, the United States Supreme Court has further reinforced the holdings of *Batson* by extending the rationale of *Batson* to gender discrimination. *J.E.B. v. Alabama ex rel. T.B.*, —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). In so holding, the Court stated:

Equal opportunity to participate in the fair administration of justice is fundamental to our democratic system. It not only furthers the goals of the jury system. It reaffirms the promise of equality under the law—that *all citizens*, regardless of race, ethnicity, or gender, have the chance to take part directly in our democracy. [Citation omitted.] When persons are excluded from participation in our democratic processes solely because of race or gender, this promise of equality dims, and the integrity of our judicial system is jeopardized.

*J.E.B.*, —— U.S. at ——, 114 S.Ct. at 1430 (emphasis added).

In light of these precedents, we find, as did this court in *West*, that *Batson* is not solely applicable to racial minorities, but rather, applies to the racially motivated removal of any venireperson regardless of his or her race because of a need to eradicate the use of racial stereotypes of any kind from the jury process. Therefore, the trial court could correctly request Defendant state his race-neutral reasons for his strikes of six whites.

■ Defendant further argues he was denied his right to a jury panel composed of a fair cross-section of the community. Defendant avers in his brief:

The simple fact is that a criminal defendant, no matter what his [or her] race, when faced with a venire panel that is ninety-three percent white is going to exercise most, if not all, of his [or her] peremptory strikes against the white members of the panel. Appellant was entitled, as a matter of law, to be tried by a jury that was a fair cross-section of the community and included blacks under the Sixth Amendment.

Defendant further contends he exercised his peremptory strikes "to secure minority representation on his jury in an attempt to overcome any such possible racial bias."

■ We disagree. First, in Missouri, Defendant's right to a fair cross-section of the community does not extend to the composition of the petit jury. *West*, 866 S.W.2d at 154[5]; *State v. Jacobs*, 813 S.W.2d 318, 321[7] (Mo.App.1991). Defendant has no

right to a jury of any specific racial composition. *West*, 866 S.W.2d at 154[6]. Moreover, the United States Supreme Court has held the prohibition against utilizing peremptory challenges in a discriminatory fashion does not violate the Sixth Amendment right to trial. *McCollum*, 505 U.S. at ——, 112 S.Ct. at 2358[10]. Therefore, Defendant was not entitled to exercise his peremptory strikes against the white venirepersons in a discriminatory fashion merely to maintain some "balance" between the number of whites and the number of African–Americans on the jury. *West*, 866 S.W.2d at 154.

■ Defendant also claims the State failed to make a *prima facie* case of discrimination pursuant to *Batson*. The Missouri Supreme Court has clearly held the *prima facie* requirement of *Batson* is not constitutionally required and trial courts no longer have to make that finding. *State v. Parker*, 836 S.W.2d 930, 940 (Mo. banc 1992). Instead, the Court has established a unitary procedure for addressing *Batson* claims. *Id.* at 939[12]. The procedure required for this case is: (1) the State must raise a *Batson* challenge to Defendant's strikes and identify the cognizable racial group to which the stricken venirepersons belong; (2) Defendant must then state "reasonably specific and clear race-neutral explanations" for the challenged strikes; and (3) if the stated reasons are found race-neutral by the court, then the State will need to show the proffered reasons were merely pretextual. *Id.*

■ Here, the stated reason for Venirepersons Condon and Knight was essentially inattentiveness. This court has clearly stated its dissatisfaction with that particular reason. *See, State v. Davis*, 835 S.W.2d 525, 528[6, 7] (Mo.App.1992); *State v. Metts*, 829 S.W.2d 585, 587–88[2] (Mo.App.1992). In *Metts*, the Court noted:

We believe a prosecutor's [or defendant's] explanation of challenges on the grounds of inattentiveness deserves careful scrutiny by the district court, and special care by counsel to fully develop the record concerning the specific behavior by venire members motivating counsel to make a peremptory challenge based on inattentiveness.

*Metts*, 829 S.W.2d at 587[2], *quoting U.S. v. Sherrills*, 929 F.2d 393, 395 (8th Cir.1991). Cautioning future litigants about the use of inattentiveness to support a peremptory strike, the Court found they should inform the trial court of any perceived inattentiveness during voir dire. *Id.* at 588. "An attorney who fails to call the court's attention to such inattentiveness should be fully prepared to have a strike due to inattentiveness disallowed." *Id.*

In light of the trial court's deference in this matter and Defendant's failure to bring the alleged "inattentiveness" to the court's attention during voir dire, we find the court's decision to disallow Defendant's strikes of Venirepersons Condon and Knight was not clearly erroneous.

■ Finally, Defendant contends in his point relied on his right to due process and a fair trial was denied by the court berating defense counsel for his alleged race-neutral reasons. However, Defendant's argument does not address this issue. In any event, such "berating" could not have prejudiced Defendant's right to due process and a fair trial, when it did not occur in front of the jury.

We deny Defendant's second point.

■ In Point I, Defendant questions the denial of his Rule 29.15 motion without an evidentiary hearing. Defendant maintains the record did not refute his claim of ineffective assistance of counsel due to: (1) his defense counsel's stipulation that the substance purchased was cocaine; and (2) his failure to properly object to the Kel transmitter tape introduced into evidence by the State. The motion court's findings are presumptively correct, and we review them only to determine if they are clearly erroneous. Rule 29.15(j); *Townsend v. State*, 854 S.W.2d 496, 497[2] (Mo.App.1993).

■ To be entitled to an evidentiary hearing, Defendant must have alleged facts warranting relief, the allegations must not be refuted by the record, and the matters must have prejudiced him. *Cole v. State*, 850 S.W.2d 406, 408[2] (Mo.App.1993). In addition, to prevail on a claim of ineffective assis-

tance of counsel, Defendant must show his attorney failed to exercise the customary skill and diligence of a reasonably competent attorney and that deficiency prejudiced him. *State v. Turner–Bey,* 812 S.W.2d 799, 808 (Mo.App.1991). Prejudice occurs where Defendant shows that but for counsel's alleged errors, the result of his trial would have been different. *Id.* at 808–09.

■■■■ Defendant first contends his counsel prejudicially erred in stipulating the substance seized was cocaine. A stipulation is generally a matter of trial strategy and will not support a claim of ineffective assistance of counsel. *State v. Hill,* 854 S.W.2d 486, 488 (Mo.App.1993). Here, Defendant is unable to show the stipulation prejudiced him. Defendant's primary defense at trial was not related to whether the substance was cocaine, but rather that he had not taken part in the actual sale of it. Whether or not the substance was cocaine was irrelevant to his defense and is not prejudicial. *See, State v. Shurn,* 866 S.W.2d 447, 471 [82] (Mo. banc 1993); *Hamm v. State,* 768 S.W.2d 574, 577[4] (Mo.App.1989). In addition, no question was ever raised about the accuracy of the report showing the substance was cocaine. Defendant also disputes his counsel's failure to object to the admission of the tape recording of the Kel transmissions. Failures to object rarely rise to the level of ineffective assistance of counsel. *State v. Adkins,* 867 S.W.2d 262, 265[11] (Mo.App.1993). Failure to object is not ineffective assistance of counsel unless Defendant suffered a substantial deprivation of the right to a fair trial. *Id.* at 265; *Bevly v. State,* 778 S.W.2d 297, 299[5] (Mo.App.1989). In addition, counsel is not ineffective for failing to make nonmeritorious objections. *Bevly,* 778 S.W.2d at 297[6].

We find no clear error in the motion court's finding an objection to the Kel recording would have been frivolous. The Kel recording was admissible, even with Defendant's inculpatory statements, as admissions because no issue of compulsion was present. *See, State v. Vinson,* 854 S.W.2d 615, 620[1] (Mo.App.1993) (admissibility of inculpatory statements depends upon whether they were compelled). Point denied.

In his final point, Defendant contends the trial court erred in submitting to the jury Instruction No. 4, patterned after MAI–CR3d 302.04, because it suggests a higher degree of doubt than is constitutionally required for acquittal. We deny this point pursuant to Missouri Supreme Court mandate. *See, Shurn,* 866 S.W.2d at 462[42]; *State v. Griffin,* 848 S.W.2d 464, 469[8] (Mo. banc 1993).

Judgments affirmed.

CRANDALL, P.J., and REINHARD, J., concur.