**STATE of Missouri, Respondent,**

v.

**Eric John BEISHLINE, Appellant.**

**Eric J. BEISHLINE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 49528, WD 51090.**

Missouri Court of Appeals, Western District.

July 2, 1996.

Rehearing Denied Aug. 27, 1996.

---

**504**

Daniel J. Dodson, Joan F. Gummels, Dodson and Gummels, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Eric Beishline appeals from convictions of murder in the first degree, § 565.020.1, RSMo 1994, and robbery in the first degree, § 569.020, RSMo 1994.[1] Mr. Beishline contends that the trial court erred by overruling his motion to suppress evidence seized from his apartment; that the trial court erred by sustaining a motion in limine filed by the State; that the prosecutor withheld exculpatory evidence; and that there was insufficient evidence to support the convictions. Mr. Beishline also appeals from the denial of his Rule 29.15 motion for postconviction relief, claiming that his trial counsel was ineffective for entering into an unfavorable stipulation with the State, and for failing to investigate and call a witness whose testimony would have supported a defense of diminished capacity.

The judgments of the trial court and the motion court are affirmed.

In the case at bar, Mr. Beishline was found guilty of robbing and murdering 72–year–old Anna Norton of Troy, Missouri. The facts pertinent to this case, however, begin with an assault on another woman, 84–year–old Evelyn Hoech of Warrenton, Missouri. On January 7, 1993, Ms. Hoech was at home when Mr. Beishline came to her door and indicated he was an insurance salesman. Mr. Beishline left after attempting to sell Ms. Hoech

some annuities, but returned to the house several hours later. Mr. Beishline forced his way inside, threw Ms. Hoech to the floor, and rendered her unconscious by placing a rag, which he soaked in some sort of fluid, over her face.

When Ms. Hoech regained consciousness thirty-five to forty minutes later, Mr. Beishline was gone and Ms. Hoech called the police. A paramedic who responded to the scene shortly thereafter testified that she smelled gas in the residence. She walked to the stove and noticed that the gas burners were unlit, but the knobs controlling some of the burners were turned on.

A police investigation of the incident led to the issuance of a warrant for Mr. Beishline's arrest. Mr. Beishline was apprehended in Columbia, Missouri at approximately 2:40 a.m. on January 9, 1993, as he walked toward his car carrying a coat and some luggage. Mr. Beishline asked the arresting officers if he could return the items which he was carrying to his apartment, and the officers assented. Once inside the apartment building, Mr. Beishline scuffled with the officers and attempted to escape, but was subdued.

After Mr. Beishline was taken into custody, his car was towed to a police department garage, where it was searched pursuant to a warrant. While searching the vehicle, the police found a woman's purse containing a driver's license issued to Anna Norton. An officer ran a routine check on the driver's license, and discovered that, about three hours earlier, Anna Norton had been reported missing.

On January 9, 1993, a warrant was issued for a search of Mr. Beishline's apartment, authorizing police to look for any personal effects or property of Ms. Norton, or any document or other record pertaining to Ms. Norton. The ensuing search was conducted the same day and, although the police did not find any evidence relating to Ms. Norton, they did seize a variety of items belonging to Mr. Beishline.

indicated.

---

1. All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise

David Nelson, the police officer who executed the search warrant, testified at a pretrial hearing that he seized an overcoat, dress shirt, and slacks belonging to Mr. Beishline because those items matched the description of clothing which Ms. Hoech had described her assailant as wearing. Officer Nelson further explained that he seized these items because the overcoat and pants had been listed as items to search for in a prior search warrant authorizing a search of Mr. Beishline's automobile, and because there appeared to be blood on the shirt.

Officer Nelson also testified that he seized surgical gloves because he was aware that "suspects sometimes wear gloves to conceal their fingerprints," and that he seized a briefcase containing a camouflage mask and some tubes because he believed the tubes to be part of a paintball gun found earlier in Mr. Beishline's automobile. In addition, Officer Nelson seized insurance documents relating to Irene Miller and Herbert Bellman because he was aware that those individuals had died under suspicious circumstances, and that Mr. Beishline was possibly involved.

On January 11, 1993, a second search warrant was issued to search Mr. Beishline's apartment for any insurance documents or correspondence pertaining to Theodore Pisarek, Emilie Mersey, and Della Crane, who the police believed to be additional victims of crimes perpetrated by Mr. Beishline. The ensuing search was conducted the same day, and resulted in the seizure of several boxes of insurance documents.

On January 15, 1993, Ms. Norton's body was found floating in the Missouri River. An autopsy revealed numerous injuries, including four broken ribs and a fractured sternum resulting from a compression of her chest. The medical examiner concluded that Ms. Norton had died from suffocation, either because of the compression of her chest or because something had been held over her nose and mouth. Laboratory tests revealed the presence of high levels of chloroform in her body.

On January 20, 1993, police officers executed a third warrant to search Mr. Beishline's apartment, and to search the storage locker on the ground floor of the apartment building. The items seized included a one-gallon bottle of chloroform found in a blue nylon gym bag.

At his trial, Mr. Beishline presented a defense of diminished capacity based upon expert testimony that his prolonged cocaine use had resulted in "cocaine psychosis" which rendered him incapable of the deliberation required to commit first-degree murder. In interviews with several expert witnesses hired by the defense, Mr. Beishline admitted that he took Ms. Norton from her home, drove to a remote location, and when Ms. Norton tried to escape, he tackled her, sat on her chest, and placed a rag containing chloroform over her mouth and nose. He further admitted that he later determined that Ms. Norton was dead, and disposed of her body in the Missouri River.

Following the trial, a jury found Mr. Beishline guilty of both first-degree murder and first-degree robbery. He was sentenced as a prior and persistent offender to life imprisonment without the possibility of probation or parole for the murder conviction, and to life imprisonment for the robbery conviction. The trial court ordered the sentences to run consecutively to each other, and to run consecutively to sentences in three other cases.

This court will first address Mr. Beishline's sole point on appeal from the denial of his Rule 29.15 motion for post-conviction relief, as that point raises issues which recur in his various points on direct appeal. Mr. Beishline claims that his trial counsel was ineffective for entering into an unfavorable stipulation with the State, and for failing to investigate and call a witness whose testimony would have supported a defense of diminished capacity.

■ Prior to trial, the parties stipulated that the State would not object to Mr. Beishline's introduction of evidence relating to a defense of diminished capacity, and that the State would not attempt to offer any evidence during the guilt phase of the trial regarding Mr. Beishline's alleged involvement in the deaths of Irene Miller or Herbert Bellman. In turn, the defense agreed not to object to the State's presentation of evidence, during the guilt phase of the trial,

regarding Mr. Beishline's alleged involvement in crimes involving Evelyn Hoech and Della Crane.

There was evidence that Mr. Beishline had been involved in a business relationship with Mr. Bellman, and that Mr. Beishline had been visiting Mr. Bellman at or near the time of Mr. Bellman's death. Also, there was evidence that Mr. Beishline had had contacts with Ms. Miller, and that he was videotaped trying to cash one of her checks close to the time of her death. The deaths of Mr. Bellman and Ms. Miller were originally believed to be from natural causes, but subsequent autopsies of both victims revealed high concentrations of chloroform in their bodies.

At trial, the State did present evidence regarding Mr. Beishline's attack on Ms. Hoech, and the substance of that evidence has already been described herein. But despite the stipulation, the State elected to not present any evidence regarding Mr. Beishline's involvement in crimes against Ms. Crane.

In his brief, Mr. Beishline contends that his trial counsel gained nothing by entering into the stipulation, as he would have been entitled to present his defense of diminished capacity without it, and because evidence of his involvement in the deaths of Mr. Bellman and Ms. Miller—which the stipulation prevented the State from introducing during the guilt phase of the trial—would not have been admissible in any event. Therefore, Mr. Beishline argues, the only real consequence of the stipulation was prejudicial to the defense, namely, that the State was guaranteed that it could introduce evidence regarding Mr. Beishline's attack on Ms. Hoech.

Daniel Gralike, Mr. Beishline's trial counsel, explained his reasons for entering into the stipulation when he testified at the evidentiary hearing on Mr. Beishline's Rule 29.15 motion. Mr. Gralike stated that he sought to prevent the State from presenting evidence regarding Mr. Bellman and Ms. Miller because he was concerned that the trial court would allow admission of such evidence under the rule which allows the admission of evidence of other crimes in or-

der to show the absence of accident or mistake. Mr. Gralike further stated that he was willing to allow the State to present evidence with respect to the attack on Ms. Hoech because he believed that the trial court would most likely allow the admission of such evidence in any event, in order to show the absence of accident or mistake. Mr. Gralike also testified that he entered into the stipulation with the agreement of Mr. Beishline that it was in his best interests to do so.

In reviewing the denial of a Rule 29.15 motion, this court is limited to a determination of whether the motion court's findings of fact, conclusions of law, and judgment are clearly erroneous. *State v. Collier*, 892 S.W.2d 686, 693 (Mo.App.1994). The decision of the motion court will be deemed clearly erroneous only if, upon review of the entire record, this court is left with the definite and firm impression that a mistake has been made. *Id.*

In order to prevail on a Rule 29.15 motion, a defendant must show "(1) that the attorney failed to use the skill and diligence of a reasonably competent attorney in a similar situation; and (2) that the defendant was prejudiced by that failure." *Id.* In order to establish the requisite prejudice, the defendant must demonstrate a reasonable probability that, in the absence of his attorney's conduct, the outcome of the proceeding would be different. *Id.*

Mr. Beishline has failed to demonstrate that he was prejudiced by the stipulation. The only potential benefit afforded the State by the stipulation was that the State was allowed to offer evidence concerning Ms. Hoech and Ms. Crane without objection, and the State only offered evidence with respect to Ms. Hoech.[2] At trial, Mr. Beishline argued that the evidence concerning Ms. Hoech actually supported his defense. During closing argument, he suggested that the fact that he didn't kill Ms. Hoech was evidence of a lack of intent to kill Ms. Norton.

Furthermore, at the evidentiary hearing on Mr. Beishline's Rule 29.15 motion, Mr.

**2.** The subject of Ms. Crane was raised by Mr. Beishline during the direct examination of one of

his own witnesses, who was then cross-examined on the subject by the State.

Gralike testified that the evidence concerning the Hoech incident was consistent with his defense strategy, and that such evidence would add credence to the argument that Mr. Beishline did not intend the death of Ms. Norton. Mr. Gralike even stated that, had the State not presented evidence regarding Ms. Hoech, he would have considered presenting that evidence as part of the defense's own case-in-chief. In light of this favorable view of the Hoech evidence, Mr. Beishline's claim that he was prejudiced by the stipulation that allowed such evidence to be admitted is not persuasive.

This court's conclusion that the stipulation was not prejudicial to Mr. Beishline is bolstered by the fact that the evidence concerning the attack on Ms. Hoech would have been admitted even over Mr. Beishline's objection. Although evidence of other crimes is not admissible to show a defendant's bad character or his propensity to commit the charged offense, such evidence may be admissible to prove the specific crime charged when it tends to establish identity, motive, intent, the absence of mistake or accident, or a common plan or scheme. *State v. Gola,* 870 S.W.2d 861, 867 (Mo.App.1993).

In the case at bar, the defense argued that the killing of Ms. Norton was not intentional, and the State argued that their evidence which showed that Mr. Beishline attacked Ms. Hoech in a similar fashion, and which suggested that he then left her for dead, tended to negate the absence of mistake or accident. The evidence concerning Ms. Hoech was admissible for the purpose of showing the absence of mistake or accident. *See State v. Hepperman,* 349 Mo. 681, 162 S.W.2d 878, 885 (1942).

Overall, the stipulation entered into by Mr. Gralike was reasonable trial strategy. As such, it does not support a claim of ineffective assistance of counsel. *State v. Holloway,* 877 S.W.2d 692, 697 (Mo.App.1994).

■ Mr. Beishline also claims that his trial counsel was ineffective for failing to investigate and call Steve Nuhn as a witness for the defense. Mr. Beishline contends that Mr. Nuhn, who was Mr. Beishline's former roommate, would have provided evidence in support of Mr. Beishline's defense of diminished capacity.

Mr. Nuhn testified at Mr. Beishline's Rule 29.15 hearing, and described an incident which occurred a number of months before Mr. Beishline's arrest. Mr. Nuhn related that, on one weekend in the fall of 1992, he returned to the apartment to discover that Mr. Beishline had poked one or two hundred holes in the walls of the apartment. According to Mr. Nuhn, Mr. Beishline explained that he had been trying to find listening devices which he believed had been planted in the apartment. Mr. Nuhn further stated that he would have been available to testify during the trial had he been called, and that his testimony would have been the same as his hearing testimony.

Mr. Gralike testified that, prior to trial, he had talked with Mr. Nuhn about his proposed testimony, but he had rejected the idea of using Mr. Nuhn's testimony for a number of reasons. First, Mr. Nuhn had told him that he had never seen Mr. Beishline use drugs, and Mr. Gralike felt it would be a tactical mistake to argue a defense of diminished capacity due to prolonged drug usage while presenting the testimony of a roommate who had no direct knowledge of such drug usage. Mr. Nuhn also communicated to Mr. Gralike that he had suspected that Mr. Beishline's business activities weren't "above-board," and that he was generally reluctant to assist in Mr. Beishline's defense. At trial, the two expert witnesses called by Mr. Beishline referred to the hole-poking incident in their testimony.

■ Mr. Gralike explained that, in his opinion, there was already ample evidence regarding Mr. Beishline's problems stemming from cocaine usage, and strategically he did not feel the need to risk eliciting detrimental testimony from Mr. Nuhn in order to get still more testimony on the subject. This was a reasonable trial strategy, and to establish ineffective assistance based upon a decision to not call a witness to testify, a defendant must establish that the decision was something other than reasonable trial strategy. *State v. Sanders,* 903 S.W.2d 234, 240 (Mo.App.1995). "If a potential witness's testimony would not unqualifiedly support a de-

fendant, the failure to call such a witness does not constitute ineffective assistance of counsel." *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992). Point denied.

■ In his first point on direct appeal, Mr. Beishline claims that the trial court erred by failing to suppress evidence seized in the January 9, 1993 and January 11, 1993 searches of his apartment. Mr. Beishline contends that the items recovered in the January 9 search of his apartment were improperly seized because none of the items were identified in the warrant authorizing the search. In addition, Mr. Beishline contends that the items seized pursuant to the January 11 search of the apartment exceeded the scope of the underlying warrant, because the warrant authorized the police to seize documents relating to only three named individuals and the police seized hundreds of documents having no relation to any of the named individuals. Mr. Beishline also contends that the evidence seized from these two searches of his apartment should have been suppressed because a prior search of his automobile was pursuant to a warrant that was based upon misleading information supplied by the police.

In response, the State notes that the trial court's order denying Mr. Beishline's pretrial motion to suppress was interlocutory and not subject to appeal. Therefore, argues the State, Mr. Beishline's first point on appeal offers nothing for review by this court.

■ "Ordinarily, a ruling on a pretrial motion to suppress may not be asserted as a ground of error on appeal because the pretrial motion to suppress and the admission at trial of the challenged evidence are two distinct procedures." *State v. Norton*, 904 S.W.2d 265, 271 (Mo.App.1995). However, where the defendant did object at trial to the admission of the evidence which he sought to suppress, this court will review the propriety of the pre-trial ruling. *Id.* A pre-trial motion to exclude evidence which is later converted into a continuing objection represents an appropriate method by which one can preserve issues for appeal. *State v. Newson*, 898 S.W.2d 710, 715 (Mo.App.1995). A continuing objection was employed in the case at bar, and this court will consider the issue properly preserved for appeal.[3]

It is unnecessary for this court to consider the merits of Mr. Beishline's claim of improperly seized evidence in order to resolve this point on appeal. A defendant seeking a new trial on the basis of the admission of evidence obtained by an improper search and seizure has the burden of proving both error and prejudice in the reception of such evidence. *State v. Morin*, 873 S.W.2d 858, 866 (Mo.App. 1994). Mr. Beishline has failed to demonstrate such prejudice.

Of all the evidence which Mr. Beishline claims was improperly seized during the searches specified in his point on appeal, only a few items were actually received into evidence. Specifically, the trial court admitted photographs of the overcoat, shirt, pair of pants, and a pair of surgical gloves seized in the first search of Mr. Beishline's apartment, and there were general references to undescribed insurance documents found inside the apartment.

Mr. Beishline offers no argument as to how he was prejudiced by this evidence at trial. Nor could he, as it is impossible to see how he was prejudiced by said evidence, which was scant and peripheral to the real issue at trial. Mr. Beishline never disputed that he, in fact, killed Ms. Norton, and therefore his defense centered on a claim of diminished capacity that precluded the mental state required by first-degree murder. The minimal evidence introduced as a result of the challenged seizures did not prejudice Mr. Beishline's defense.

Instead of claiming prejudice from the introduction of this evidence at trial, Mr. Beishline claims that, as a result of the improper seizures, he was prejudiced because the threat of evidence of other crimes coerced him into entering into a stipulation with the State. However, Mr. Beishline cannot now claim coercion when the stipulation was a reasonable strategic choice that merely al-

---

**3.** A defendant must also keep the issue alive by bringing it to the trial court's attention in a motion for a new trial, *State v. Anderson*, 698 S.W.2d 849, 851 (Mo. banc 1985), and that, too, was done in the case at bar.

lowed the State to present evidence which the defense believed was favorable to their case. Furthermore, as this court explained in response to Mr. Beishline's Rule 29.15 appeal, the stipulation of which he now complains was not, in fact, prejudicial to his defense. Therefore, even assuming, merely for the sake of argument, that there were items improperly seized during the specific searches which Mr. Beishline challenges in his point on appeal, Mr. Beishline has failed to demonstrate any prejudice resulting to his defense. Point denied.

■ In his second point on direct appeal, Mr. Beishline claims that the trial court erred when, prior to trial, the trial court sustained a motion in limine filed by the State. The motion in limine sought to exclude evidence of Mr. Beishline's use of cocaine, which constituted the basis for Mr. Beishline's defense of diminished capacity. The State argued that the evidence of cocaine use was not admissible because voluntary intoxication was not a valid defense, and because Mr. Beishline had not filed a written notice of intent to rely upon a defense of mental disease or defect.

After the trial court sustained the State's motion in limine, the State filed an amended information, and Mr. Beishline responded by filing a written notice of his intent to rely upon a defense of diminished capacity. Later, at a pretrial hearing, the trial court noted that its order granting the State's motion in limine had been based upon Mr. Beishline's failure to file the necessary notice of intent, and because Mr. Beishline had eventually filed such a notice, a subsequent ruling "might not be the same as it was previously." Then, just before the beginning of the trial, Mr. Beishline and the State entered into a stipulation providing that Mr. Beishline would be allowed to present evidence of his "diminished capacity" defense without objection from the State.

■ In order for issues raised in a motion in limine to be preserved for appeal, those issues must be raised at trial. *State v. Henderson,* 826 S.W.2d 371, 374 (Mo.App. 1992). Mr. Beishline's claim concerning the State's motion in limine was not raised at trial because, as a result of the stipulation,

there was no objection to Mr. Beishline's proffered evidence in support of his defense of diminished capacity. There is only the trial court's ruling on the motion in limine which, because it is interlocutory, is not appealable. *Id.*

■ Nevertheless, Mr. Beishline argues that the trial court's decision to grant the State's motion in limine prejudiced him because it forced him into entering into a stipulation in order to gain a benefit that should have already been his, namely, admission of evidence supporting a defense of diminished capacity. Mr. Beishline also claims that the decision was prejudicial because it forced his trial counsel to divert his attention from trial preparation in order to respond to the possible loss of the best defense available to him.

Mr. Beishline's claims of prejudice are unpersuasive. Mr. Beishline cannot now claim that he was forced into a stipulation when that stipulation was a reasonable strategic choice which did not prejudice his defense. Also, Mr. Beishline's claim that his trial counsel's attention was diverted from trial preparation by the ruling does not merit relief on appeal. A review of the transcript reveals that Mr. Beishline's attorney presented a defense which was thoroughly prepared and competently presented. Point denied.

■ In his third point on direct appeal, Mr. Beishline claims that the prosecuting attorney of Boone County, who tried the charges in the case at bar, withheld evidence which tended to exculpate him of involvement in the death of Mr. Bellman. Mr. Beishline contends that the prosecuting attorney's failure to produce this allegedly exculpatory evidence before the guilt phase of his trial had concluded constituted misconduct which violated Mr. Beishline's due process rights.

The evidence which the prosecuting attorney of Boone County allegedly failed to disclose was a red cardboard file folder which had actually been in the possession of Mr. Richard Lee, an investigator for the Cole County prosecutor's office. The file folder contained documents which had been inside a briefcase that belonged to Mr. Beishline, and which had been seized from Mr. Beishline's

automobile shortly after his arrest. The documents allegedly included a receipt which showed that Mr. Beishline had refunded Mr. Bellman's money on a cancelled insurance application.

Mr. Beishline argues that this documentary evidence showing that Mr. Bellman's money had been refunded to him would tend to exonerate him of involvement in Mr. Bellman's murder, insofar as Mr. Beishline was a suspect in Mr. Bellman's death based upon a theory that Mr. Beishline was engaged in a scheme to defraud elderly persons and then murder them.

Mr. Beishline suggests that this unproduced documentary evidence should have been provided in response to his pre-trial request for disclosure of evidence of other crimes which the State intended to introduce against Mr. Beishline. However, no such discovery request appears in the legal file, and therefore this court is unable to review any claim of a failure to comply with a request for disclosure. *State v. McCoy*, 559 S.W.2d 298, 299–300 (Mo.App.1977).

Mr. Beishline seeks to avoid the consequences of a lack of a discovery request in the legal file by noting that even absent a request for disclosure, the prosecution must disclose any exculpatory evidence, citing *State v. Robinson*, 835 S.W.2d 303, 306 (Mo. banc 1992). The problem with this argument, and with this entire point on appeal, is that the documentary evidence concerning a refund allegedly given to Mr. Bellman was not truly exculpatory or, for that matter, even relevant to any issue that was actually raised in this case.

Pursuant to the pre-trial stipulation entered into between the parties, the State did not introduce any evidence regarding Mr. Bellman during the guilt phase of the trial. During the penalty phase of the trial, the trial court prevented the State from introducing such evidence by sustaining a motion in limine filed by Mr. Beishline. Consequently, Mr. Beishline's entire argument under this point involves the State's alleged failure to disclose evidence which supposedly would have "exonerated" Mr. Beishline of involvement in a crime with which he was never charged, and evidence of which was never introduced by the State at any stage of the trial. It is impossible to see how Mr. Beishline was in any way prejudiced by an alleged failure to disclose documentary evidence of a refund paid to Mr. Bellman when the case was devoid of any evidence of Mr. Beishline's involvement in any crime committed against Mr. Bellman.

Nevertheless, Mr. Beishline argues that he was prejudiced because, as a result of the alleged failure to disclose the "exculpatory" evidence concerning Mr. Bellman, he was forced to enter into an unfavorable stipulation with the State in order to exclude any evidence concerning Mr. Bellman. However, as previously stated, the stipulation was a reasonable strategic choice which was not prejudicial to Mr. Beishline's defense. Point denied.

■■■ In his final point on direct appeal, Mr. Beishline claims that there was insufficient evidence to support his conviction of first-degree murder. Specifically, Mr. Beishline contends that the evidence was insufficient to establish that he had the requisite mental state to commit first-degree murder.

Mr. Beishline does not dispute that the evidence established he suffocated Ms. Norton, either by compressing her chest or by placing a rag soaked in chloroform over her nose and mouth. Instead, Mr. Beishline suggests that he was merely trying to subdue Ms. Norton when he committed these acts, and that he suffered from a cocaine psychosis which rendered him incapable of deliberating upon her murder.

■■■■ In reviewing the sufficiency of the evidence to support a criminal conviction, this court views the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the State, and disregards all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). This court's review "is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.*

■■■■ In order to make a submissible case of first-degree murder, the State is re-

quired to establish, beyond a reasonable doubt, that the defendant "knowingly cause[d] the death of another person after deliberation upon the matter." *State v. Watson,* 839 S.W.2d 611, 616 (Mo.App.1992); § 565.020.1. In this context, deliberation is defined as "cool reflection for any length of time no matter how brief." *State v. Feltrop,* 803 S.W.2d 1, 11 (Mo. banc 1991); § 565.002(3). For deliberation to occur, it is not necessary for the defendant to brood over his actions for an appreciable period of time. *Feltrop,* 803 S.W.2d at 11. "Deliberation may be inferred from the circumstances surrounding the murder." *Id.*

At trial, Mr. Beishline presented a defense of diminished capacity—a defense which the jury ultimately rejected. Expert witnesses who had interviewed Mr. Beishline prior to trial related Mr. Beishline's version of events in their trial testimony. They recounted that Mr. Beishline had stopped the car on the side of a road to think, that Ms. Norton had gotten out of the car, and that he had gone after her, thrown himself on her, and then placed a chloroform-soaked rag over her nose and mouth. These circumstances indicate that Mr. Beishline had several opportunities for the necessary reflection just before he killed Ms. Norton, any one of which would have been sufficient for a jury to reasonably infer that there was deliberation for the purposes of first-degree murder.

First, the testimony indicated that Mr. Beishline had to pursue Ms. Norton before throwing himself on her, and this testimony supports a reasonable inference that Mr. Beishline reflected for at least the time it took to reach Ms. Norton. *See State v. Smith,* 781 S.W.2d 761, 765 (Mo. banc 1989), *vacated on other grounds,* 495 U.S. 916, 110 S.Ct. 1944, 109 L.Ed.2d 306 (1990) (evidence that a defendant had to take a few steps before stabbing the victim gives rise to a reasonable inference of sufficient deliberation, citing *State v. Clemmons,* 753 S.W.2d 901, 906 (Mo. banc 1988)).

Second, the jury could have reasonably inferred that, when Ms. Norton exited the automobile, Mr. Beishline had to either (1) prepare a chloroform-soaked rag or (2) reach for an already-soaked rag before pursuing her and covering her mouth and nose with the rag. The necessary deliberation could have been inferred from either reaching for the rag, *see State v. Bridges,* 810 S.W.2d 682, 684 (Mo.App.1991) (defendant's removal of a gun from his waistband and its immediate use indicate deliberation), or preparing the rag. *See State v. Mallett,* 732 S.W.2d 527, 533 (Mo. banc 1987) (evidence that a defendant slipped out of handcuffs before attacking a state trooper gives rise to a reasonable inference of deliberation).

Third, the testimony indicated that Ms. Norton suffocated when Mr. Beishline compressed her chest and covered her nose and mouth. The medical examiner explained the significant length of time required to produce death by suffocation, and from this the jury could have reasonably inferred that Mr. Beishline acted with deliberation. *See State v. Parkus,* 753 S.W.2d 881, 884–85 (Mo. banc 1988) (jury can infer deliberation during the time which elapsed while defendant choked victim to death).

Mr. Beishline also claims that there was insufficient evidence that he knowingly killed Ms. Norton. A person acts knowingly "[w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." Section 562.016.3(2); *State v. Light,* 835 S.W.2d 933, 936 (Mo.App.1992). In this case, the jury could reasonably infer that Mr. Beishline was aware that compressing the chest and closing the airways of a 72–year–old woman by holding a chloroform-soaked rag over her nose and mouth was practically certain to kill her. Point denied.

The judgments of the trial court and the motion court are affirmed.

All concur.