**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Wayman J. WHITE,
Defendant–Appellant.**

No. 58089.

Missouri Court of Appeals,
Eastern District,
Division One.

May 21, 1991.

**732**

J. Kevin Hamlett, Mexico, for defendant-appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant, Wayman J. White (hereinafter White), appeals from a conviction by a jury for one count of conspiracy to possess amphetamine, a schedule II controlled substance, § 564.016 RSMo 1986, and one count of possession of methamphetamine, a schedule II controlled substance, § 195.020 RSMo 1986 (repealed 1989), which were obtained in the Circuit Court of Audrain County. White was sentenced to five years with a $500.00 fine for the conspiracy to possess amphetamine charge and to three years for the possession of methamphetamine charge.

We review the evidence in the light most favorable to the verdict. On December 6, 1988, Missouri Highway Patrolman Eric S. Wilhoit (hereinafter Wilhoit) was on patrol in Miller County when he observed a pickup truck pulling a U–Haul trailer traveling east bound on U.S. 54. Wilhoit effectuated a stop of the pickup truck because it was traveling at an excessive speed and because it was traveling improperly in the left lane. Wilhoit observed the driver of the pickup, Jeffrey Brooks (hereinafter Brooks), to be very nervous and uneasy. Because of this behavior, Wilhoit asked Brooks if he had anything illegal in his vehicle or his trailer. Wilhoit proceeded to ask Brooks for his consent for Wilhoit to search both the pickup and the trailer.

Wilhoit found a 9 millimeter pistol underneath the seat of the pickup and 9 millimeter rounds and a 25.06 rifle elsewhere in the truck. Wilhoit also searched the trailer and discovered a plastic bag containing 229 grams of amphetamine. Wilhoit then placed Brooks under arrest for possession of a controlled substance and of a concealed weapon. Brooks was then transported to the Eldon Police Station where Brooks told Missouri Highway patrolman Terry Mills (hereinafter Mills) that he had been traveling to the Villa Inn in Mexico, Missouri, to deliver the amphetamine to White.

Brooks agreed to cooperate with the Missouri Highway Patrol and drove the pickup truck and U–Haul trailer, accompanied by Wilhoit, to the Villa Inn in Mexico, Missouri. Powdered sugar was substituted for the 229 grams of amphetamine. Once Brooks arrived at the Villa Inn, the Missouri Highway Patrol placed the area under surveillance.

The next day, December 7, 1988, at approximately 6:30 a.m., White and Robin Bruhn (hereinafter Bruhn) arrived at the Villa Inn in a red Chevrolet. White exited the car and entered room 19 of the Villa Inn, emerging approximately fifteen minutes later. White and Bruhn then walked to the restaurant in the motel and forty-five minutes later they returned to room 19. Shortly thereafter, White and Bruhn exited the motel room and Bruhn got back in the red Chevrolet while White walked to the cab of the pickup and then to the back of the U–Haul trailer. White then disappeared inside the trailer and reappeared a few minutes later, carrying in one hand a hanging bag which contained the 229 grams of amphetamine and a nylon bag in the other hand.

Mills and Missouri Highway Patrolman Joseph Crump (hereinafter Crump), who both had been a short distance away, identified themselves as police officers and advised White that he was under arrest. Mills and Crump ordered White to drop both bags and lay down on the pavement. Mills picked up White's billfold which was laying on the ground to determine White's identity and Mills subsequently found a small bag containing methamphetamines in the billfold.

White presented no evidence in his defense and was found guilty of conspiracy to possess amphetamine and guilty of possession of methamphetamine. This appeal follows.

■ Defendant's first point on appeal alleges that the trial court erred in denying defendant's motion for a mistrial because Mills testified at trial that White was asked for a statement and refused to give one. White alleges that this testimony by Mills infringed upon his right to remain silent after being arrested.

Defendant's point of error stems from the following colloquy between the prosecutor and the witness, Mills:

Q. Did you have occasion to see the defendant there at the Audrain County Jail?

A. Not initially. I had him brought in to the deputy's room upstairs.

Q. What was the purpose of doing it? Why did you have him brought up?

A. To conduct a formal interview following the arrest.

Q. Did you have any equipment with you?

A. Yes, sir, I did.

Q. What equipment did you have with you?

A. I had the black light or the ultraviolet light kit.

[State's Exhibit No. 4 is marked for identification.]

Q. [By Mr. Osborne] I want to show you Exhibit 4 and ask if you can explain to us what that is.

A. This is a box containing the kit which contains the ultraviolet light and a bottle of this anthracine powder that I spoke of earlier.

Q. What did you do?

A. Myself, Sergeant Hug and Trooper Crump were all in the room. We attempted to conduct an interview, as I said, and ask Mr. White some questions. He refused—

At this point defense counsel objected and moved for a mistrial on the ground that the discourse involved an impermissible comment on the defendant's exercise of his Fifth Amendment right not to incriminate himself. The court denied the motion, stating that the prosecutor's question was not phrased in a way that was intended to elicit an impermissible response by Mills. The court further issued a limiting instruction and struck Mill's response from the record.

■ The State may not use post-arrest silence either as affirmative proof of the defendant's guilt or to impeach his testimony. *State v. Mathenia*, 702 S.W.2d 840, 842 (Mo. banc), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986).

> [I]t does not comport with due process to permit the prosecution during trial to call attention to [an accused's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time ... an unfavorable inference might be drawn as to the truth of his trial testimony....

*Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). *Quoting United States v. Hale*, 422 U.S. 171, 182–183, 95 S.Ct. 2133, 2139–40, 45 L.Ed.2d 99 (White, J., Concurring).

In *Mathenia* however, the Missouri Supreme Court found that an impermissible comment on the defendant's post-arrest silence was "merely preliminary to the admission into evidence of the appellant's videotaped statement" and therefore harmless error. The comment made by Mills was "merely preliminary" to the description by him of the effect that exhibit 4—the ultraviolet light had on the defendant. White was asked to pass his hands underneath the light after being told by Mills that an anthracine powder was placed on the inside of the plastic bag that was put in the U–Haul trailer. The defendant then made an unsolicited statement: "I didn't touch it."

Our examination of the record in this case does not reveal that this brief reference to the defendant's post-arrest silence was used as affirmative proof or to impeach the defendant, but was "merely preliminary" to Mills explaining that White did in fact eventually offer a statement. Such

a brief reference in the context of this case does not warrant the granting of such a drastic remedy as that of a mistrial. *See State v. Shelton,* 779 S.W.2d 614, 616 (Mo. App.1989). Point denied.

Defendant's second point on appeal alleges that the trial court erred in allowing the state to elicit testimony from Mills that Brooks told law enforcement officers that he was to deliver drugs to White because the testimony was hearsay and further that it violated White's Constitutional right to confront the witnesses against him.

White's allegation stems from the following colloquy between the prosecutor and Mills:

Q. When you were there [Eldon, Missouri], after talking to him [Wilhoit], did you talk to the person that he had in custody, Jeffrey Scott Brooks?

A. Yes, sir, I did.

Q. Did Brooks tell you where his destination was?

A. Yes, sir, he did.

Q. Did he tell you who he was to make a delivery to?

A. Yes, sir.

Q. Where did he say his destination was?

A. Mexico, Missouri.

Q. To whom did he say his delivery was to?

MR. HAMLETT: Objection, hearsay.

THE COURT: Overruled.

A. [By the witness] Pardon me?

Q. To whom did he say his delivery was to?

A. To Wayman White.

Based on this information Mills decided to proceed with the delivery and obtained the cooperation of Brooks. Wilhoit accompanied Brooks on the delivery and when Brooks arrived at the Villa Inn, the Missouri State Highway Patrol set up surveillance of the motel and awaited the arrival of White.

It is well established law that a statement which leads to action by the police is admissible to supply relevant background and to explain the reason for subsequent police conduct and is not inadmissible

hearsay. *State v. Pieron,* 755 S.W.2d 303, 307 (Mo.App.1988). "The triers of fact can be provided a portrayal of the events in question, which is more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or the reasons for the officers' subsequent activities." *Id.*

Although this is an out of court statement being related by the witness, Mills, the statement is not being offered for the truth of the matter asserted but instead for the nonhearsay purpose of explaining the reason for the subsequent police conduct of proceeding with the delivery of the amphetamine and then placing the Villa Inn under surveillance awaiting the arrival of White. *See State v. Jordan,* 664 S.W.2d 668, 670 (Mo.App.1984).

White also claims that his rights to confrontation were violated and we find that claim to be without merit. When testimony is admissible under any recognized exception to the hearsay rule, then "neither the objection that it is hearsay nor the objection that the accused is denied the right to confrontation and cross-examination is valid." *Pieron* at 307, *quoting State v. Spica,* 389 S.W.2d 35, 46 (Mo. 1965). Point denied.

Judgment affirmed.

KAROHL and GRIMM, JJ., concur.