STATE of Missouri, Respondent,

v.

Tony WILLIAMS, Appellant.

No. WD 49977.

Missouri Court of Appeals, Western District.

April 22, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 1997.

Lew Kollias, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Daryle A. Edwards, Assistant Attorney General, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and LAURA DENVIR STITH and HOWARD, JJ.

BRECKENRIDGE, Presiding Judge.

Tony Williams appeals from his convictions for first degree murder and armed criminal action. Mr. Williams was sentenced to life imprisonment without the possibility of parole. On direct appeal, Mr. Williams claims that the evidence was insufficient to support his first degree murder conviction because he did not shoot the victim, or possess the required mental state. In addition, Mr. Williams claims that the trial court plainly erred by allowing the State to argue during closing argument that one of its witnesses had no mental problem because that assertion implied that the prosecutor had special knowledge of facts not known to the jury. Mr. Williams also appeals from the denial,

without an evidentiary hearing, of his Rule 29.15 motion in which he claimed ineffective assistance of counsel.

On April 6, 1992, the victim, Tyrone Johnson, was fatally shot while at his home in Kansas City, Missouri. The evidence suggested that a dispute existed between Mr. Johnson and his girlfriend's daughter, Sonya Tabron. Apparently, on the evening before, Mr. Johnson had informed Ms. Tabron's boyfriend that she was rather liberal in her sexual pursuits. Ms. Tabron noticed that her boyfriend was upset, but he would not tell her what was wrong. Although they had plans to acquire a car for Ms. Tabron on the 6th, when Ms. Tabron's boyfriend arose he left, ostensibly to go to the store, but he never returned. When Ms. Tabron learned of Mr. Johnson's comments to her boyfriend, she decided to have someone beat him up.

Later that day, Ms. Tabron got the opportunity to put her plan into action when her cousin brought Tony Williams, the defendant, and his brother, Randolph Williams, to her house. Ms. Tabron test drove the vehicle that Randolph was driving, and then Ms. Tabron, her cousin and a friend of her cousin got in the car with them. While they were driving around, Ms. Tabron discussed the problems she was having with Mr. Johnson and told them that she wanted to hire someone to "beat him up." Randolph responded, in hearing range of Mr. Williams, that he was willing to take on this enterprise for a fee. During a discussion on the matter, Ms. Tabron asked the men's names. They were reluctant to tell her, but finally Mr. Williams stated that his name was Lamont and Randolph said his name was Mc Shy D. Ms. Tabron indicated that she had $100 and she offered to pay them each $50 to handle the matter. The group then drove to a white house, where Randolph retrieved a shotgun. After getting the weapon, Ms. Tabron and Randolph argued back and forth whether Randolph was going to shoot Mr. Johnson or just beat him up. When the argument ended, Randolph was supposed to beat up Mr. Johnson.

Eventually, Ms. Tabron showed the defendant and his brother where Mr. Johnson lived. Then Randolph and Mr. Williams went back to the cousin's house where they ate dinner and listened to music. Once he finished eating, Mr. Williams told Ms. Tabron's cousin that he and Randolph were going to go and "take care of business" for Ms. Tabron. The brothers left the cousin's house and went to Mr. Johnson's home, where he was sitting at the dining room table with his mother. Mr. Williams knocked on the door and asked to speak to Mr. Johnson. When Mr. Johnson answered, Mr. Williams confirmed his identity and then held the screen door open while Randolph reached around and shot Mr. Johnson in the chest.

The brothers immediately went back to Ms. Tabron's house to collect their $100. When they arrived, Ms. Tabron, who had already heard about the shooting, told them that they were only supposed to beat up Mr. Johnson, not kill him. Randolph insisted on payment. Ms. Tabron told them to come back later for the money. She then went with her mother to the hospital where Mr. Johnson was taken. The brothers followed Ms. Tabron to the hospital, persisting in the request of the $100. While the brothers were inside the hospital, Mr. Williams had a shotgun concealed under his jacket.

Ms. Tabron and the brothers left the hospital together, and went to Ms. Tabron's cousin's house to tell her to keep quiet. On their way, they stopped at a different white house where Randolph took the shotgun from Mr. Williams and disposed of it. While Randolph was inside the house, Mr. Williams told Ms. Tabron the details of the shooting and that the shotgun in his possession was the one they used to shoot Mr. Johnson. At her cousin's house, Ms. Tabron and the brothers related the events of the evening and everyone agreed that "[d]on't nobody say nothing about what happened."

When Ms. Tabron returned to the hospital, she learned that Mr. Johnson had died because of the gunshot wound. She went home and put $100 in an envelope, which she left on her porch. She then called a phone number she had been given by Randolph and told a lady "that they had mail on her porch." She never did see the envelope again.

Subsequently, Ms. Tabron and the brothers were charged with first degree murder. Pursuant to a plea bargain, Ms. Tabron pled guilty to involuntary manslaughter for her role in initiating the events that led to the homicide. Randolph was convicted of first degree murder. At Mr. Williams' trial, he presented a defense of alibi. His cousin and sister testified that he was with them at the time of the murder. At the close of the evidence, the jury found Mr. Williams guilty of one count of first degree murder and one count of armed criminal action. The trial court sentenced Mr. Williams to life imprisonment without parole for the murder conviction and fifteen years for the armed criminal action conviction.

After his conviction, Mr. Williams filed a timely Rule 29.15 motion for post-conviction relief in which he claimed ineffective assistance of counsel. The motion court entered findings of fact and conclusions of law denying Mr. Williams' motion without an evidentiary hearing.

In his first point on direct appeal, Mr. Williams contends that there was insufficient evidence to support his conviction for first degree murder. Appellate review of a claim of insufficiency of the evidence in a criminal case is limited to a determination of whether there is "sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Gordon,* 915 S.W.2d 393, 396 (Mo. App.1996). Sufficient evidence is evidence "from which the trier of fact could reasonably find the issue in harmony with the verdict." *Id.* (quoting *State v. Gomez,* 863 S.W.2d 652, 655 (Mo.App.1993)). This court views the evidence, as well as its reasonable inferences, in a light most favorable to the verdict. *State v. Stacy,* 913 S.W.2d 384, 386 (Mo.App. 1996).

■ Because Randolph was the individual who killed Mr. Johnson, Mr. Williams was charged with first degree murder based on his liability as an accomplice to the homicide. An individual may be convicted as an accomplice to first degree murder if the individual "aided in the crime with the purpose of promoting the commission of that crime." *State v. Six,* 805 S.W.2d 159, 164 (Mo. banc 1991). Viewed in a light most favorable to the State, there was evidence that Mr. Williams helped his brother obtain the shotgun that was used in the shooting. Mr. Williams summoned Mr. Johnson to the door, verified Mr. Johnson's identity, then held the door open while his brother shot Mr. Johnson. Finally, there was evidence that Mr. Williams went with his brother to request payment from Ms. Tabron and then aided in disposing of the shotgun. Therefore, there was sufficient evidence that Mr. Williams aided in the commission of the crime to charge him as an accomplice to the homicide.

■ However, first degree murder accomplice liability requires more than just affirmative acts in furtherance of the homicide. Due to the unique mental state required of first degree murder, the accomplice must also have deliberated prior to the homicide. *State v. O'Brien,* 857 S.W.2d 212, 218 (Mo. banc 1993). In other words, although the act of homicide may be imputed to an accomplice who aided in the commission of the crime, the required mental state may not be imputed. *Id.* Therefore, the question as to the sufficiency of the evidence in this case depends on whether there was sufficient evidence that Mr. Williams deliberated prior to Mr. Johnson's murder.

■ " 'Deliberation' means cool reflection for any length of time no matter how brief." Section 565.002(3), RSMo 1994. *See also State v. Storey,* 901 S.W.2d 886, 897 (Mo. banc 1995). To prove deliberation there must be some evidence that the defendant made a decision to kill the victim prior to the murder. *State v. Gray,* 887 S.W.2d 369, 376 (Mo. banc 1994). "Deliberation is normally proved by indirect evidence and inferences drawn from the circumstances surrounding the murder." *Stacy,* 913 S.W.2d at 386.

In cases of accessory liability for first degree murder, evidence of at least three circumstances appears to be highly relevant in determining if accomplice deliberation may be inferred. The first circumstance is where there is a statement or conduct by the defendant or a statement or conduct by a codefendant in the presence

of defendant prior to the murder indicating a purpose to kill a human.

A second circumstance permitting an inference of accessory liability is evidence that the murder was committed by means of a deadly weapon and the accomplice was aware that the deadly weapon was to be used in the commission of the crime.

A third factual circumstance common in first degree murder cases where accomplice deliberation is found to exist is where there is evidence that the accessory either participated in the homicide or continued in the criminal enterprise when it was apparent that a victim was to be killed.

*Gray,* 887 S.W.2d at 376–77 (citations omitted). Leaving the scene immediately after the victim is shot without checking on the victim's welfare and then assisting in disposing of the weapon used in the shooting will also support an inference of deliberation by an accomplice. *State v. Howard,* 896 S.W.2d 471, 481 (Mo.App.1995).

Here, there was sufficient evidence to support the jury's finding that Mr. Williams possessed the mental state required of first degree murder. Mr. Williams helped procure the shotgun and then heard Randolph arguing with Ms. Tabron that he wanted to shoot Mr. Johnson rather than beat him up. He knew his brother took the shotgun with them when they went to the front door of Mr. Johnson's home. He then called Mr. Johnson to the door and confirmed Mr. Johnson's identity, while his brother was waiting for Mr. Johnson with a shotgun.

After Randolph shot Mr. Johnson, Mr. Williams and Randolph left the scene without checking on Mr. Johnson's welfare, and later went to the hospital where Mr. Johnson lay dying in order to collect the money owed them by Ms. Tabron. Furthermore, there was evidence that Mr. Williams participated in disposing of the weapon used in the shooting and discussed with others that nothing should be said. All of Mr. Williams' activities after the murder were undertaken with a "somewhat chilling nonchalance about events," demonstrating Mr. Williams' complete state of indifference to the shooting of Mr. Johnson, which also supports the jury's finding of deliberation. *See State v. Great-*

*house,* 627 S.W.2d 592, 596 (Mo.1982). Because there was sufficient evidence from which a reasonable juror might have found Mr. Williams guilty beyond a reasonable doubt as an accomplice of all the elements of first degree murder, including deliberation, the trial court did not err in overruling Mr. Williams' motion for judgment of acquittal at the close of all the evidence. Point one is denied.

As his second allegation on direct appeal, Mr. Williams contends that the trial court plainly erred by allowing the prosecutor to argue in closing that its witness, Ms. Tabron, had no mental health problems. Mr. Williams alleges that this argument was improper because it unfairly bolstered the witness' credibility and implied that the prosecutor had special knowledge concerning Ms. Tabron. Mr. Williams claims he was particularly prejudiced by this error because the State had successfully prevented any inquiry at trial into the psychological condition of Ms. Tabron. Mr. Williams acknowledges that he did not object to this reference at trial or in his motion for a new trial. Therefore, these remarks are only reviewable for plain error. *State v. Ervin,* 835 S.W.2d 905, 921 (Mo. banc 1992) *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

An assertion of plain error places a much greater burden on a defendant than an assertion of prejudicial error. *State v. Hunn,* 821 S.W.2d 866, 869 (Mo.App.1991). A defendant must not only show prejudicial error occurred, but must also show that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error was left uncorrected. *Id.* at 869–70. Appellate courts rarely grant relief on the basis of plain error for remarks made during closing argument. *State v. Sumlin,* 915 S.W.2d 366, 369 (Mo.App.1996). Allegedly improper remarks in closing argument do not entitle a defendant to relief under the plain error rule unless they are determined to have had a decisive effect on the jury. *State v. Isaiah,* 874 S.W.2d 429, 439 (Mo.App. 1994).

In this case, Mr. Williams fails to sustain his burden of proving that the allegedly improper remarks concerning Ms. Tabron's lack of a mental problem had a decisive effect on the jury. In his closing argument, Mr. Williams advanced the theory of defense that Sonya Tabron, not Mr. Williams, accompanied Randolph when he shot Mr. Johnson. Defense counsel argued that Ms. Tabron was a liar who was motivated to "save her own skin" and obtain a beneficial plea bargain in exchange for her testimony.

In rebuttal argument, the prosecutor addressed the evidence before the jury concerning Ms. Tabron's credibility. The challenged statement occurred in the following context:

> But the question here is not whether you like the deal or I like the deal, or defense likes the deal that Sonya Tabron got. The only question is, did she come through and do what she is supposed to, and that's testifying truthfully? You all got to decided if what she testified to, she testified truthfully.
>
> And the Court read to you the instructions telling you Instruction No. 1, you take up there with you. In determining the believability of the witness and weight to be given to the testimony of it, you may take into consideration the witness' manner while testifying. Of course you saw her manner. You could tell she was telling you the truth. She admitted about the times that she lied. She didn't deny it. Remember Angie got up there, I would have go show her things and she would still keep saying, well, I don't think I really said that even though its in a deposition she gave? Ms. Tabron never did that? She said, yeah, I said that, but if there was something different and it was pointed out in everything she said different before, defense had an opportunity to point it out. There was a few minor things, nothing major that went to her story. The ability and the opportunity of the witness to ob-

serve and remember any manner about which the testimony is given. *She has got no mental problems.*

(Emphasis added).

The context of the statement does not seem to imply that the prosecutor had special knowledge or was referring to the lack of evidence of mental problems. An objective interpretation of the prosecutor's statement was that Ms. Tabron's manner in testifying did not indicate that she had any mental problems affecting her memory. The state may argue opinions fairly drawn from the evidence. *State v. Mease,* 842 S.W.2d 98, 109 (Mo. banc 1992) *cert. denied,* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

Even assuming that the prosecutor's remarks were inappropriate, it is highly unlikely that this isolated remark in closing argument had a decisive effect on the jury. *State v. Pendas,* 855 S.W.2d 512, 516 (Mo. App.1993). Therefore, there was no manifest injustice, and the trial court did not plainly err by failing to intervene in the State's closing argument. Point two is denied.

As his only point on appeal from the rulings of the motion court, Mr. Williams contends that the motion court erred by denying his Rule 29.15 motion without an evidentiary hearing because he received ineffective assistance of counsel. Mr. Williams predicates this charge on three allegations: (1) trial counsel was ineffective for failing to call two witnesses, Silvia Johnson and Nancy Borneman;[1] (2) trial counsel was ineffective for not alerting the trial court to the fact that two jurors were sleeping during portions of the trial; and (3) trial counsel was ineffective for failing to object to the prosecutor's statement in closing argument that Ms. Tabron was free of mental problems.

On review, this court is limited to a determination of whether the lower court's findings of fact, conclusions of law and judgment are clearly erroneous. *State v. Beishline,* 926 S.W.2d 501, 506 (Mo.App.1996); Rule

---

1. Although Mr. Williams argues in his brief before this court that his trial counsel was ineffective for failing to interview these witnesses, this court is bound by the statement of error in his point relied on. *See State v. Crenshaw,* 852

S.W.2d 181, 185 n. 4 (Mo.App.1993). Therefore, we will only consider Mr. Williams' claim that his counsel was ineffective for failing to call the alibi witnesses.

29.15(k). The decision of the motion court will be deemed clearly erroneous only if, upon review of the entire record, this court is left with the definite and firm impression that a mistake has been made. *Beishline,* 926 S.W.2d at 506.

The defendant confronts a heavy burden when challenging the presumption of competency of defense counsel. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). To be successful, the defendant must show (1) that the attorney failed to use the skill and diligence of a reasonably competent attorney in a similar situation; and (2) that the defendant was prejudiced by that failure. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sanders,* 738 S.W.2d at 857. There is a strong presumption that the challenged action constitutes sound trial strategy, thereby rendering it reasonably skillful and diligent. *Sanders,* 738 S.W.2d at 858.

To be entitled to an evidentiary hearing on a post-conviction motion, the movant must meet three requirements. *State v. Driver,* 912 S.W.2d 52, 55 (Mo. banc 1995). First, the movant must allege facts, not conclusions, warranting relief. *Id.* Second, the files and records of the case must not conclusively refute the facts alleged in the motion. *Id.* Finally, "the matters complained of must have resulted in prejudice to the movant." *Id.*

To warrant a hearing on a claim that defense counsel was ineffective for failing to call a witness to testify, the movant must allege: (1) the identify of the witness; (2) what the witness' testimony would have been; (3) that counsel was informed of the witness' existence; and (4) whether the witness was available to testify. *State v. Simmons,* 875 S.W.2d 919, 923 (Mo.App.1994). In addition, the witness' testimony must be such that it would have provided the movant with a viable defense. *State v. Buchanan,* 836 S.W.2d 90, 93 (Mo.App.1992). On appeal, counsel's decision not to call a witness is presumed to be a decision of trial strategy and will not support the overturning of a conviction on the basis of ineffective assistance of counsel unless proved otherwise. *State v. Patterson,* 826 S.W.2d 38, 41 (Mo.App.1992); *Odom v. State* 783 S.W.2d 486, 487–88 (Mo.App.1990).

With respect to his first claim of ineffectiveness of counsel, Mr. Williams' Rule 29.15 motion alleged facts which, if true, warrant relief. Mr. Williams claimed in his Rule 29.15 motion that his trial counsel was ineffective for failing to call Sylvia Johnson as a witness because her testimony would have been favorable to his defense. Specifically, the motion claimed that Ms. Johnson, the victim's sister, would have testified that she witnessed the murder and that Mr. Williams was not one of the perpetrators of the shooting. Mr. Johnson alleges that Ms. Johnson had previously made a statement of her knowledge of the shooting, and she also confirmed these same facts to Ms. Tabron and her mother, Gayle. He asserts that trial counsel knew of Ms. Johnson's existence and her information, and that trial counsel knew how to contact Ms. Johnson. In the motion, Mr. Williams further claims that he requested several times that Ms. Johnson testify, but he was told by defense counsel that Ms. Johnson would probably be reluctant to testify because she was the victim's sister.

On its face, Mr. Williams' Rule 29.15 motion contains allegations which are sufficient to raise a factual issue with respect to trial counsel's exercise of the requisite degree of skill and diligence. *State v. Ivy,* 869 S.W.2d 297, 300 (Mo.App.1994). These allegations are not rebutted by the record. There is no evidence in the record that Mr. Williams' trial counsel made a decision not to call Silvia Johnson based on an investigation of or interview with Ms. Johnson. Nor is there any evidence that conclusively refutes Mr. Williams' allegations that Ms. Johnson would have exonerated him from the crime and that he requested that she testify. In fact, there is an inference from the evidence that Ms. Johnson was home at the time of the shooting, because Ms. Johnson's mother testified that after the shooting her daughter was the one who went to the hospital with her son since she was advised by the police to stay home and watch her house.

Mr. Williams' allegations, if true, would also support a finding of prejudice. *Jones v. State,* 760 S.W.2d 176, 177 (Mo.App.1988).

In light of the fact that Ms. Johnson's proposed testimony would completely exonerate Mr. Williams of the crime, it would not have been reasonable trial strategy not to call such a witness. Therefore, under the *Driver* test, the trial court erred in denying Mr. Williams' Rule 29.15 motion, without an evidentiary hearing, with respect to his allegation of ineffective counsel for failure to call Sylvia Johnson as a witness.

■ Mr. Williams also claims that his counsel was ineffective for failure to call Nancy Borneman as a witness, because she was a non-family alibi witness. He argues that an unrelated witness would have been perceived by the jury as more credible than his relatives who presented alibi evidence. In his motion, however, Mr. Williams does not allege what the testimony of Ms. Borneman would have been. He merely identifies her as an "alibi" witness. Therefore, he failed to state a claim of ineffective assistance of counsel for failure to call a witness, and the trial court did not err in denying this claim without an evidentiary hearing. *Simmons,* 875 S.W.2d at 923.

■ In his post-conviction motion, Mr. Williams also contended that his trial counsel was ineffective for failing to notify the trial court that two of the jury members were sleeping during the trial. Mr. Williams pleaded that he informed his trial counsel that the two jurors were sleeping, to which counsel responded that there was nothing counsel could do unless the judge observed the jurors sleeping. Therefore, Mr. Williams alleged, he was denied his right to effective assistance of counsel because he was prejudiced since the two jurors were sleeping during the presentation of "crucial portions of evidence and testimony." He alleged that his right to a fair trial was compromised and that the trial results were unreliable and suspect.

Although Mr. Williams' Rule 29.15 motion contains the foregoing allegations, it does not sufficiently state facts which support a finding of prejudice. Mr. Williams bears the burden of pleading sufficient factual allegations of prejudice as a result of trial counsel's failure to bring this matter to the court's attention. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. However, Mr. Williams did not satisfy this burden in his motion. The mere fact that a juror slept during the trial does not entitle him to relief, he must have been prejudiced by that sleeping. *See State v. Fritz,* 913 S.W.2d 941, 945 (Mo.App. 1996).

While Mr. Williams does allege that the jurors slept during "crucial portions of the trial," this statement is conclusory and not a sufficient pleading of facts. Mr. Williams does not identify what point in the trial the jurors were asleep. In contrast, the movant in the *Fritz* case was entitled to a hearing when he pled that the jurors slept "through a significant portion of the testimony of the alleged victim, and the only eye-witness...." *Id.* As a result, Mr. Williams' allegations are insufficient to entitle Mr. Williams to an evidentiary hearing, and the motion court did not clearly err in denying Mr. Williams' Rule 29.15 motion on this ground.

■ Finally, this court must address Mr. Williams' contention that trial counsel was ineffective for failing to object to the prosecutor's statement during closing argument that Ms. Tabron has "no mental problems." The mere failure to object, by itself, does not constitute ineffective assistance of counsel. *State v. Shurn,* 866 S.W.2d 447, 471 (Mo. banc 1993). To demonstrate that trial counsel was ineffective for failing to object to a portion of the State's closing argument, the movant must show that "counsel's overall performance fell short of established norms and that this incompetence probably affected the result." *Jones v. State,* 784 S.W.2d 789, 793 (Mo. banc 1990). Otherwise, the movant is held to counsel's failure to object and is denied the ability to convert unpreserved error into viable error. *Id.*

■ This court has already found that there was no plain error with regard to Mr. Williams' claim concerning the closing argument on direct appeal. A finding of no manifest injustice on direct plain error review establishes a finding of no prejudice for purposes of the *Strickland* test. *State v. Clark,* 913 S.W.2d 399, 406 (Mo.App.1996). Therefore, the motion court did not plainly err in denying Mr. Williams' Rule 29.15 motion.

The judgment of the trial court is affirmed. The judgment of the motion court is reversed and remanded for an evidentiary hearing solely on Mr. Williams' claim concerning counsel's failure to call the victim's sister as a witness. In all other respects, the judgment of the motion court denying post-conviction relief is affirmed.

All concur.