Steven MASDEN, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 59618.

Missouri Court of Appeals,
Western District.

Dec. 18, 2001.

---

**9.** Her actual release date was March 15, 2001.

Andrew A. Schroeder, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Edgington, Asst. Atty. Gen., Jefferson City, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, HAROLD L. LOWENSTEIN, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Steven R. Masden appeals from the denial of his Rule 29.15 motion for post-conviction relief without an evidentiary hearing.

On January 26, 1998, Appellant was convicted by jury of murder in the first degree, § 565.020, and armed criminal action. He was sentenced to life imprisonment without the chance of parole for the murder charge to be served consecutively with a term of life imprisonment for armed criminal action.

The underlying facts of this case were set forth in this Court's prior opinion affirming the trial court's judgment on direct appeal:

On May 5, 1997, the body of Michael Davis, Jr., was found face-down in a creek bed in Platte County. His head had been wrapped in a pillowcase and plastic bag, which were tied around his neck with a telephone cord. When the police arrived at the scene, they found blood on the bridge over the creek. They seized a section of the guardrail that contained a bloody smear, the outline of fingers in blood, and what appeared to be a palm print.

On May 9, 1997, the appellant's girlfriend, Michelle Farris, went to the police and told them that she believed that the appellant had killed Davis. She told them that when she came home from work on May 4, 1997, she heard the appellant and Joel Hopkins talking about getting "Mike," and heard Joel mention a plan and state that "this has got to be done." That same night, the appellant and Hopkins left the house between 6:00 and 7:00 p.m. in Hopkins's car. When they left, the appellant was wearing jeans and a T-shirt, and Hopkins was wearing jeans and a Michigan sweatshirt. At 11:30 p.m., the appellant called Farris and told her to "get him some pants ready." When he arrived home at 5:30 the next morning, the appellant was wearing shorts and Hopkins's sweatshirt. Both the shorts and

sweatshirt appeared to have blood on them.

Farris told the police that the appellant had given her the following account of what had happened the night Davis was killed. The appellant went to Hopkins's girlfriend's house. Hopkins left to get the victim. When Hopkins and the victim arrived, Hopkins brought him down to the basement where the appellant was hiding. When the victim got downstairs, the appellant hit him in the head with a cinder block, and Hopkins kicked him in the head. The appellant also slit his throat. The men left the victim's body in the basement for approximately an hour to allow it to "drain." They then placed the pillowcase and plastic bag over his head, put him in the trunk of Hopkins's car, drove him to the creek, and dumped him over the bridge.

As a result of what Farris told them, the police obtained a search warrant for Hopkins's car, Hopkins's girlfriend's house, and Farris's house. They discovered blood in the car, in the basement of the house where the murder occurred, on a block in a crawlspace in the basement, and in the basement drain. The police also determined that the bloody palm print on the bridge guardrail matched the appellant's right palm print. The appellant was arrested on May 10, 1997, and charged with murder in the first degree, § 565.020, and armed criminal action, § 571.015. The case was tried to a jury beginning on January 26, 1998.

\* \* \*

Farris testified at trial, repeating the account of the murder that she had previously given to the police. The medical examiner, who had examined the victim's body, also testified. At the close of the State's evidence, the appellant made a motion for judgment of acquittal, which was denied. He presented no evidence in his own defense and made a motion for judgment of acquittal at the close of all of the evidence, which was also denied.

The jury returned guilty verdicts as to both counts. The appellant filed a motion for a new trial, which was denied. On April 2, 1998, the trial court, the Honorable Owens Lee Hull, Jr., entered its judgment convicting the appellant of murder in the first degree and armed criminal action and sentencing him to consecutive sentences of life imprisonment, without the possibility of parole, and life imprisonment, respectively.

*State v. Masden*, 990 S.W.2d 190, 192–93 (Mo.App. W.D.1999).

After this court affirmed Appellant's conviction on direct appeal, on June 1, 1999, Appellant filed a Rule 29.15 motion for post-conviction relief. An amended motion was filed by appointed counsel on September 2, 1999.

On November 30, 2000, the motion court denied Appellant's motion without an evidentiary hearing. Appellant brings two points on appeal arguing that the motion court erred in failing to conduct an evidentiary hearing on his motion.

Our review of the motion court's denial of a Rule 29.15 motion is limited to determining whether the findings and conclusion of the motion court are clearly erroneous. Rule 29.15(k). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000).

The issue in this case is whether the trial court erred in refusing to grant Appellant an evidentiary hearing on his

Rule 29.15 motion, not whether Appellant is entitled to relief. *State v. Ivy*, 869 S.W.2d 297, 299 (Mo.App. E.D.1994). "With respect to claims related to ineffective assistance of counsel, to obtain an evidentiary hearing, the movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that movant was thereby prejudiced." *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997); *See also State v. Ferguson*, 20 S.W.3d 485, 505 (Mo. banc 2000). If the movant's motion fails to satisfy all of these requirements, the motion court may properly deny the motion without an evidentiary hearing. *State v. Jones*, 979 S.W.2d 171, 180 (Mo. banc 1998).

In his first point, Appellant claims the motion court erred in denying him an evidentiary hearing on his claim that trial counsel was ineffective for failing to interview or call to testify two alibi witnesses. The trial court held that Appellant's motion did not sufficiently plead his claim to warrant an evidentiary hearing.

■■■ "[A] post-conviction pleading asserting ineffective assistance of counsel must allege facts showing what counsel did or said that was improper and facts showing how the movant was prejudiced." *White v. State*, 939 S.W.2d 887, 894 (Mo. banc 1997). In order to merit an evidentiary hearing on a post-conviction claim of ineffective assistance of counsel related to "counsel's failure to investigate, appellant must specifically identify who the witnesses were, what their testimony would have been, whether or not counsel was informed of their existence, and whether or not they were available to testify." *Morrow v. State*, 21 S.W.3d 819, 823 (Mo. banc 2000). "In addition, the witness' testimony must be such that it would have

provided the movant with a viable defense." *State v. Williams*, 945 S.W.2d 575, 582 (Mo.App. W.D.1997).

■■■ In his amended motion, Appellant identified two witnesses, Neisha Gobley and Tammie Masden, who he claimed counsel improperly failed to interview or call to testify at trial. He claimed that he had asked trial counsel to interview these witnesses and to call them to testify and that he had informed counsel of their existence, their current addresses, the substance of their testimony and their availability to testify at trial. Appellant also spelled out what the testimony of these witnesses would have been and averred that they would have been available to testify at trial. Appellant claimed that the witnesses would have testified that he was at their apartment the entire evening on the date of the murder and that he had informed counsel of this alibi testimony. He claimed that their testimony would establish that he did not become involved in the situation until after the murder had occurred and Joel Hopkins came to the apartment and asked him to help dispose of the body. Appellant alleged that, had this testimony establishing that he was in the apartment of Ms. Masden and Ms. Gobley at the time of the murder been presented to the jury, there is a reasonable probability that the outcome of the trial would have been different.

In denying Appellant's claims related to counsel's failure to interview or call these witnesses, motion court found:

a. That movant failed to satisfy his burden with respect to allegations of ineffective assistance of counsel on the basis of trial counsel's failure to call Tammie Masden or Neisha Gobley as trial witnesses. Movant's amended motion fails to allege sufficient facts to establish that these two witnesses testimony would have

changed the outcome of Movant's trial. Both of these witnesses could have been impeached based on their relationship with Movant. Movant does not allege that either of these witnesses would testify that he was present with them at the time the murder occurred. Furthermore, Movant's allegation that these two witnesses testimony would have impeached the State's witness, Michelle Farris, is unfounded in that the alleged testimony of these witnesses does not conflict with the trial testimony of Ms. Farris.

b.  Finally, the substantial weight of the respondent's case against Movant would have outweighed the proposed testimony of both Ms. Tammie Masden and Ms. Neisha Gobley.

\* \* \*

In conclusion, the Court finds that movant has not proven his claims of ineffective assistance of counsel by a preponderance of the evidence and movant's motion is therefore denied.

■ Initially, we note that the trial court appears to have applied a preponderance of the evidence standard in evaluating whether Appellant was entitled to an evidentiary hearing. But the issue before the court was whether Appellant pled sufficient facts to warrant an evidentiary hearing. Without an evidentiary hearing, the case was not in a posture where the trial court could reasonably weigh the evidence. In order to be entitled to an evidentiary hearing, Appellant was only required to "allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that movant was thereby prejudiced." *Brooks,* 960 S.W.2d at 497.

The trial court's finding that Appellant did "not allege that either of these witnesses would testify that he was present with them at the time the murder occurred" is tenuous at best and does not support the denial of an evidentiary hearing to Appellant. Appellant affirmatively pled that Ms. Masden would offer the following testimony at the evidentiary hearing:

From May, 1997, to January, 1998, Ms. Masden was living at an apartment at 1302 Scott in Independence, Missouri. Between 6:30 and 7:00 p.m. on May 4, 1997, Joel Hopkins dropped Movant off at Ms. Masden's apartment. Movant remained in Ms. Masden's apartment until 11:30 or 12:00 that evening, at which time Mr. Hopkins returned. Mr. Hopkins told Movant that he needed Movant to help him get "rid" of a body. Before agreeing to help Mr. Hopkins, Movant called his girlfriend, Michelle Farris, and asked her to "get him some pants ready." Movant then left with Mr. Hopkins in Mr. Hopkins' red Honda Prelude.

Ms. Masden will recall that she pleaded with Movant not to get involved in helping Mr. Hopkins dispose of a body. Ms. Masden will testify that the foregoing event "shook" her up so severely that the date of the event will remain forever fixed in her mind. Ms. Masden will recall that Movant's trial counsel, Martin Warhurst, never interviewed or contacted her, and never asked her to testify at Movant's trial. Finally, Ms. Masden will acknowledge that she would have testified to all of the foregoing information had trial counsel called her as a witness at Movant's trial.

With regard to Ms. Gobley, Appellant pled the following:

Movant will present the following testimony from Neisha Gobley at an evidentiary hearing. From May, 1997, to

January, 1998, Ms. Gobley was living in an apartment with Tammie Masden at 1302 Scott in Independence, Missouri. Between 6:30 and 7:00 p.m. on May 4, 1997, Joel Hopkins dropped Movant off at her apartment. Movant remained in Ms. Gobley's apartment until 11:30 or 12:00 that evening, at which time Mr. Hopkins returned. Mr. Hopkins told Movant that he needed Movant to help him get "rid" of a body. Before agreeing to help Mr. Hopkins, Movant made a telephone call and asked someone to "get him some pants ready." Movant then left with Mr. Hopkins in Mr. Hopkins' red Honda Prelude.

Ms. Gobley will testify that she remembers the events that happened on the evening of May 4, 1997, because she had been seeing Movant "on and off," and was shocked when Movant willingly became involved in helping a friend dispose of a body. Ms. Gobley will recall that Movant's trial counsel, Martin Warhurst, never interviewed or contacted her, and never asked her to testify at Movant's trial. Finally, Ms. Gobley will acknowledge that she would have testified to all of the foregoing information had trial counsel called her as a witness at Movant's trial.

The clear implication of these pleadings is that Ms. Gobley and Ms. Masden were present with Appellant at their apartment during this time period and that they witnessed the events about which they would be testifying. The motion court's effort to draw a contrary inference has no basis in the record.

Moreover, even if the trial court's finding were supported by the record, the motion court could not properly base its denial of an evidentiary hearing on this finding. Whether the witnesses were physically present with Appellant every minute of the night is an issue that goes to the weight to be given to the testimony, and it does not change the fact that Appellant sufficiently set forth testimony that could have afforded him a defense at trial.

Similarly, the motion court's finding that the witnesses' testimony would not have impeached the testimony of Ms. Farris is not a valid basis for denying an evidentiary hearing. Certainly, the witness testimony does not contradict Ms. Farris' claim that Appellant made certain admissions to her. But the state offered Ms. Farris' testimony about Appellant's admissions as proof of the matters asserted. The testimony of Ms. Masden and Ms. Gobley directly contradicts the facts contained in the purported admissions. Furthermore, even if the witnesses' testimony did not impeach the State's witness and was consistent therewith, Appellant's pleadings still set forth testimony from these witnesses that could have provided him with a defense and potentially affected the outcome of the trial.

In denying Appellant an evidentiary hearing, the trial court also determined that the witnesses' testimony would have been impeached by their "relationship with" Appellant [1] and that their testimony would not have carried sufficient weight to overcome the evidence presented by the State. Had such findings been made after an evidentiary hearing at which the motion court had an opportunity to hear Ms. Masden and Ms. Gobley's testimony, observe their demeanor and consider their credibility, they might well have been sufficient to support the denial of relief. *Ivy,* 869 S.W.2d at 301. Making such findings

---

1. The trial court apparently relied on factual allegations contained in Appellant's post-conviction motion acknowledging that Ms. Masden was his sister and that he had been involved with Ms. Gobley romantically "on and off" in the past.

without having conducted an evidentiary hearing, however, is tantamount to finding that, as a matter of law, the testimony of these witnesses was so compromised by matters of record that their testimony at trial could not have affected the jury's determination. *Id.* The record simply does not support such a determination.

In *State v. Ivy*, 869 S.W.2d 297, 301 (Mo.App. E.D.1994), the motion court's decision to deny relief without an evidentiary hearing was reversed where the motion court based its decision on findings that the witness "had previously given a contrary statement to the grand jury which had been made part of the legal file and that such statement, coupled with his natural bias as a relative, would have rendered his testimony unlikely to be believed by a jury and therefore would not have affected the outcome of the trial." *Id.* If prior, contradictory grand jury testimony was not sufficient to support the trial court's decision in *Ivy*, certainly statements in Appellant's post-conviction motion in the case at bar acknowledging that one of the witnesses was his sister and that he had been involved romantically "on and off" with the other witness cannot support the trial court's decision to deny an evidentiary hearing in this case. Without having heard the testimony and observed the witnesses, the trial court cannot possibly accurately assess the credibility of the witness or the weight of their testimony. *Id.*

With respect to Appellant's averments related to Ms. Gobley, the motion court also found:

> With respect to Neisha Gobley, Movant's amended motion fails to allege that she could have been located through reasonable investigation in that Movant

alleges that he does not know where or how to locate her.

This finding by the motion court is clearly erroneous.

In making its finding, the motion court was relying on a footnote in Appellant's motion indicating that motion counsel was in the process of tracking down Ms. Gobley who had gotten married to Ted Hansen of Lee's Summit, had presumably assumed Mr. Hansen's name, and had moved to a new residence subsequent to Appellant's trial. Motion counsel stated that he expected to locate Ms. Gobley prior to the evidentiary hearing on the motion.

Motion counsel's present ability to locate a witness does not have any bearing on whether Appellant's pleadings sufficiently alleged that trial counsel could have reasonably located her. While Appellant's ability to locate and present Ms. Gobley to testify at an evidentiary hearing may well effect whether he is able to meet his burden of proof at that hearing, it is not a relevant factor in determining whether he is entitled to a hearing. Appellant's pleadings clearly stated that Appellant told trial counsel about the existence of Ms. Gobley, where she was currently living, that she would be available to testify at trial, and what her testimony would be.[2] Accordingly, Appellant pleaded facts that were not contradicted by the record and which, if proven, would establish that trial counsel could have located Ms. Gobley through reasonable investigation.

On its face, Appellant's motion contains sufficient allegations to raise a factual issue with regard to trial counsel's exercise of the requisite degree of skill and diligence. *See Williams*, 945 S.W.2d at 582; *Ivy*, 869 S.W.2d at 300. The allegations in

---

**2.** Indeed, Appellant's motion pleadings reflect that Ms. Gobley was living with Appellant's sister at the time of trial.

the motion are not rebutted by the record and, if true, would support a finding of prejudice. While the proposed testimony would certainly establish that Appellant was guilty of other crimes in helping Mr. Hopkins after the murder, the testimony, if found credible, would have provided him with a defense to the charged crimes. *See Pelton v. State,* 794 S.W.2d 301, 303 (Mo. App. W.D.1990) (holding that an individual cannot be held criminally liable for another's acts merely because he or she aided the individual after the completion of the crime).[3] If the jury believed the witnesses testimony and found that Appellant's involvement was limited to aiding Mr. Hopkins after the completion of the crime, he could not have been found guilty of first degree murder or armed criminal action in the death of Mr. Davis. *Id.*

The record simply does not support the motion court's decision denying an evidentiary hearing on Appellant's motion with regard to his claimed alibi witnesses. Accordingly, we must reverse the motion court's ruling and remand the matter to the trial court to conduct an evidentiary hearing on this issue.

■ In his second point, Appellant claims the trial court erred in failing to grant him an evidentiary hearing on his claim that appellate counsel was ineffective for failing to raise a claim on appeal related to the trial court's overruling of a hearsay objection to testimony offered by Officer Maria Pittman. Appellant claims that the trial court's admission of the following testimony by Officer Pittman at trial would have warranted reversal had it been raised by appellate counsel on appeal:

Q: I want to talk about these things up here on the board. Before you talked to Miss Farris, had you ever heard of that blue house from anyone in this investigation?

A: No.

Q: Had you ever heard, before you talked to Michelle Farris, from anyone that had been talked to in this investigation that a murder had been committed in a basement?

A: No.

Q: Had you ever heard, before you talked to Michelle Farris, from anyone in this investigation that there was a—

[Defense Counsel]: Objection, Your Honor, to qualify this witness as an expert on what happened or didn't happen in this case. What she heard or didn't hear from other witnesses is inferential hearsay.

[The State]: You Honor, she is an investigating agent. If he wants to bring other detectives in here who heard these things, he may feel free. But I'm asking her if the first time she heard these things was from Michelle Farris.

The Court: Overruled.

Q: Anything about a block, before you talked to Michelle Farris, in your involvement in this investigation?

A: No.

Q: Of course, you knew his throat had been cut, because you had seen the body?

A: Correct.

Q: Had you ever heard anything about a drain—

---

3. Under the accomplice liability statute, § 562.041.1, "[a] person is criminally responsible for the conduct of another when either before or during the commission of an offense he aids such other person." *Pelton v. State,*

794 S.W.2d 301, 303 (Mo.App. W.D.1990). "There are other, specific crimes for which an accessory after the fact may be liable, such as concealing an offense or hindering prosecution." *Id.*

A: No.

Q: —in this case, before you talked to Michelle Farris? Had you ever heard anything about a hose in this case, before you talked to Michelle Farris?

A: No.

Q: Had you ever heard that the body was transported in the trunk of a Honda Prelude, before you talked to Michelle Farris?

A: No.

Q: Of course, you knew where the body was found. Had you ever heard anything about the carpet not being in the trunk of that red Honda Prelude, before you talked to Michelle Farris?

A: No.

Q: You knew that there was a bag and a cord, because you'd seen the body. Had anyone ever told you that you knew that that victim had his boxer shorts on, because you'd seen the body?

A: Correct.

Q: Had anyone ever told you the victim didn't have his boxer shorts on?

A: No.

Q: All those things that you never heard before, even though the investigation had been going on for how many days?

A: Approximately, four days.

Q: And there were how many detectives working on it?

A: Approximately, 16 I believe.

Q: All those things that she told you after four days and 16 detectives,

did those all in fact turn out to be true?

A: Yes.

Appellant claims that the testimony about what other witnesses questioned during the investigation had not said was impermissible hearsay, that his objection to that testimony was properly preserved for appeal, that the testimony prejudicially prevented him from arguing that Ms. Farris fabricated her story from rumors that had been spreading in the community and was not based on an admission by Appellant, and that had appellate counsel raised this issue on appeal the conviction would have been reversed.

▬▬ "When reviewing a claim of ineffective assistance of appellate counsel, strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted on appeal and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it." *Hall v. State*, 16 S.W.3d 582, 587 (Mo. banc 2000) (citing *State v. Edwards*, 983 S.W.2d 520, 522 (Mo. banc 1999)). " 'The right to relief . . . due to ineffective assistance of appellate counsel inevitably tracks the plain error rule; i.e., the error that was not raised on appeal was so substantial as to amount to a manifest injustice or miscarriage of justice.' " *Moss*, 10 S.W.3d at 514–15 (quoting *Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994)). Having reviewed the testimony that was objected to, we simply do not believe that any error by the trial court in admitting the challenged testimony could have resulted in a manifest injustice or miscarriage of justice.[4]

---

4. We note that Appellant only objected to one of the State's questions, and accordingly, his claim was not preserved for appeal as it relates to the majority of the testimony. *State v. Cruz*, 971 S.W.2d 901, 904 (Mo.App. W.D.

1998). Where no objection is made to hearsay, its admission does not rise to the level of plain error. *State v. Kelley*, 953 S.W.2d 73, 86 (Mo.App. S.D.1997).

The state offered the officer's testimony to explain her conduct in the investigation, not to prove the truth of the facts asserted. " 'It is well established that testimony offered to explain conduct, rather than to prove the truth of the facts testified to is not inadmissible hearsay.' " *State v. Ross,* 857 S.W.2d 375, 378 (Mo.App. W.D.1993) (quoting *State v. Pettit,* 719 S.W.2d 474, 476 (Mo.App. E.D.1986)). "When testimony is admissible under any recognized exception to the hearsay rule, then 'neither the objection that it is hearsay nor the objection that the accused is denied the right to confrontation and cross-examination is valid.' " *Id.* (quoting *State v. White,* 809 S.W.2d 731, 734 (Mo.App. E.D.1991)). The motion court did not err in denying this claim without an evidentiary hearing.

In sum, the trial court properly denied Appellant's claim regarding ineffective assistance of appellate counsel because his challenge to the testimony of Officer Pittman would not have succeeded on appeal. However, the trial court erred in failing to grant Appellant an evidentiary hearing to present evidence on the alleged ineffective assistance of trial counsel in failing to interview and call alibi witnesses. The record simply does not support the motion court's decision not to conduct an evidentiary hearing on that claim. Therefore, we must reverse the motion court's ruling and remand the matter to the trial court to conduct an evidentiary hearing on this matter.

All concur.